**In the Matter of Reginald W. ALLEN, Bankrupt.**

**Mary TICKNER, Plaintiff,**

v.

**Reginald W. ALLEN, Defendant.**

**Bankruptcy No. 79–2261 AP 165.**

United States Bankruptcy Court, W. D. New York.

April 7, 1980.

Shapiro & Rosenbaum by Sanford R. Shapiro, Rochester, N.Y., for plaintiff.

DeMari & Iannini by Joseph G. DeMaria, Rochester, N.Y., for defendant.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

There are two matters involving the same plaintiff and defendant which came on to be heard together. The first is an objection to discharge under Section 17(a)(2) of the Bankruptcy Act and the second is an objection to the trustee's report and debtor's claim of exemptions. Both matters have been heard and briefed by the parties and submitted to the Court for decision.

With regard to the first action, the objection to discharge under 17(a)(2), the facts are as follows. The plaintiff, Tickner, sued the debtor, Allen, for breach of contract in the New York Supreme Court, prior to Allen's filing his petition in bankruptcy with this Court. Tickner's action was presented on a breach of contract theory but the breach was proved based on fraudulent scheme for selling tickets. Plaintiff obtained a jury verdict of $2,189.25, which the trial judge set aside, because he believed the verdict to be a compromise verdict. The plaintiff, Tickner, appealed and the Appellate Division of the State Supreme Court unanimously reversed the trial judge and reinstated the verdict. As a result of that verdict, plaintiff entered a judgment in the amount of $4,143.49 in the office of the Monroe County clerk on or about July 18, 1979. The trial transcript of the State Supreme Court action has been entered as the only exhibit in this action.

The question raised is the effect to be given the prior State Court judgment by this Court in its determination of the plaintiff's nondischargeability complaint. Plaintiff and defendant have argued the doctrines of res judicata and collateral estoppel.

The doctrine of res judicata "is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of con-

current jurisdiction." 46 Am.Jur.2d *Judgments* § 394 (1969). There are actually two aspects of the doctrine of res judicata. The term "res judicata" is the term usually used to designate that aspect of the doctrine which precluded the relitigation of the same cause of action. *Id.* § 397. The term "collateral estoppel," on the other hand, precludes "the relitigation of particular issues in a subsequent action on a different cause of action," and is often referred to as "issue preclusion." *Id.* "The term 'collateral' estoppel is intended to emphasize the fact that the causes of action involved in the two proceedings are different even though the issues or some of them are the same." Scott, *Collateral Estoppel by Judgment*, 56 Harv.L.Rev. 1 (1942). This doctrine is considered a fundamental principle of jurisprudence and its effect is that "material facts or questions which were directly in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties or their privies, regardless of the form that the issue may take in the subsequent action." 46 Am.Jur.2d *Judgments* § 415 (1969). Furthermore,

> The rule precluding the relitigation of facts or questions formerly in issue applies whether the issue decided in the earlier action was presented as a ground of recovery or as a defense, or whether the issue was decided in the earlier action in favor of the plaintiff or the defendant, and even though the subsequent action is a different form of proceeding, is upon a different cause of action, and involves a different subject matter, claim or demand, than the earlier action in such cases, it is likewise immaterial that the two actions have a different scope, or are based on different grounds, or are tried on different theories, or are instituted for different purposes, and seek different relief.

46 Am.Jur.2d *Judgments* § 415 (1969). In the application of the doctrine of collateral estoppel, "it is immaterial that the prior action sounded in tort and later one in contract, or vice versa." *Id.* § 428.

Where a second lawsuit between two parties is based on a different cause of action and the collateral estoppel effect of the first lawsuit is at issue, the rule is that the judgment in the first suit *operates as an estoppel only as to those issues or questions* "actually litigated and determined." *Id.* § 418 *. A judgment in the first action does not operate as an estoppel as to matters not litigated in the former action nor those which might have been litigated. *Id.* § 420. As stated in *Brown v. Felsen*, 442 U.S. 127, 139 n.10, 99 S.Ct. 2205, 2213 n.10, 60 L.Ed.2d 767, 776 n.10 (1979): "Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in the prior [action]."

The doctrines of res judicata and collateral estoppel have been applied in the bankruptcy context in numerous cases and in several of these the specific requirements necessary for the application of the doctrines is set forth. The recent case of *In re Meade Land & Development Co. Inc.*, 1 B.R. 279 (Bkrtcy.E.D.Pa.1979), specifically stated that four things are required for the doctrine of res judicata to apply: (1) identity of the thing being sued upon; (2) identity of the cause of action; (3) identity of persons and parties; and (4) identity of capacity of a party to sue or be sued. Dealing with the other aspect of res judicata, *In re Webster*, 1 B.R. 61 (Bkrtcy.E.D.Va.1979), quoting *McMillan, et al. v. Freedom Finance Co. Inc.*, 579 F.2d 289 (3rd Cir. 1978), stated that in order to give collateral estoppel effect to a prior action four requirements must be met: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination

* Emphasis Added.

must have been essential to the prior judgment.

In the two bankruptcy cases above, which deal with the res judicata doctrine, there was a prior state court judgment and subsequent nondischargeability litigation similar to the situation at bar. Under these circumstances, the courts have identified both a res judicata and a collateral estoppel issue.

█ Under the doctrine of collateral estoppel, any issue actually and necessarily decided in the state court action is precluded from being relitigated in bankruptcy court during resolution of a dischargeability complaint. In fact, the Supreme Court just recently reiterated this conclusion:

If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.

*Brown v. Felsen*, 442 U.S. 127, 139 n.10, 99 S.Ct. 2205, 2213 n.10, 60 L.Ed.2d 767, 776 n.10 (1979).

Citing *Brown v. Felsen*, Judge Britton in *In re Evans*, 1 B.R. 229 (Bkrtcy.S.D.Fla. 1979), after concluding that a state court judgment established each of the elements essential to deny discharge under § 17(a)(4), held that the debtor was estopped by that judgment from relitigating those facts in bankruptcy court. Moreover, two courts have held that where state court findings establish without ambiguity all elements of § 17(a)(2) necessary to a judgment on nondischargeability, collateral estoppel operates to foreclose retrial of those issues. *In re Manitta*, 1 B.R. 393 (Bkrtcy.C.D.Calif.1979); *In re Douglass*, 5 Bankr.Ct.Dec. 603 (N.D. Calif.1979). Also, the court in *In re Webster*, 1 B.R. 61, 63 (Bkrtcy.E.D.Va.1979) concluded "if the question of fraud was actually and necessarily litigated in the non-bankruptcy court before bankruptcy ensues, and if fraud is clearly found, the bankrupt is estopped to deny the fraud in any later action in the bankruptcy court to determine dischargeability." And, quoting from *National Homes Corp. v. Lester Industries, Inc.*, 336 F.Supp. 644 (W.D.Va.1972), the court went on:

[I]f the trial judge had specifically found that as a matter of fact and as a matter of law that the acts complained of were 'willful and malicious injuries' to person or property and had entered judgment accordingly, this court would be without power to reconsider the same. On the other hand, if such court had not made such a conclusion . . . this court may examine such parts of the record of the court entering the judgment as may be necessary to determine whether or not the acts complained of, for which judgment was entered, constitute willful and malicious injuries within the meaning of the statute.

336 F.Supp. 644 at 648.

This last case brings up the question, however, of what difference, if any, does it make if the state court action was not a fraud action but instead was characterized as a contract action by the plaintiff? This turns this discussion to the res judicata aspect of the problem. Typical in this type of case you have a creditor with two or more causes of action for the same debt, at least one in tort and one in contract. Not anticipating bankruptcy, judgment is taken in contract only and when bankruptcy ensues there is the question of whether or not the creditor may now prove a tort.

*In re Pigge*, 2 Bankr.Ct.Dec. 744 (4th Cir. 1976), rejected the idea that a claim reduced to judgment not based upon fraud precluded a creditor from attempting to prove fraud in the dischargeability action. In this case plaintiff commenced an action on alternative counts, one in contract and one in fraud, but judgment was taken only in contract and there was no resolution of the fraud count either way. The court stated:

Section 17(a)(2) of the Bankruptcy Act declares that the exclusive jurisdiction to determine whether a debt is dischargeable is vested in the Bankruptcy Court. And when that debt has been previously reduced to judgment in a state court, the Bankruptcy Court, in the exercise of its

exclusive jurisdiction to determine dischargeability of the debt may, contrary to the position or the bankrupt, look behind the judgment itself at the nature or the debt for which the judgment was entered. In so doing, it is not confined to the record in the court in which the judgment was entered; it may, when necessary to ascertain the nature of the debt on which the judgment was entered, admit and consider extrinsic evidence.

2 Bankr.Ct.Dec. 744 at 745.

The case of *In re Cushingberry*, 5 Bankr. Ct.Dec. 954 (E.D.Mich.1977) held similarly:

The fact that a liability has been reduced to judgment prior to bankruptcy should not prevent the bankruptcy court from determining the nature of the liability involved. In instituting a suit prior to bankruptcy a creditor is concerned solely with the question of liability. The creditor should not, therefore, in a dischargeability action be bound by the form or content of the pre-bankruptcy judgment. The actual character, rather than the form and style of judgment should control. Prior to the filing of a petition in bankruptcy a creditor is merely concerned with the collection of debt. It is difficult to comprehend why a creditor should be compelled to litigate a fraud issue on the contingency that the debtor might file a petition in bankruptcy. A creditor should be able to obtain the judgment he then requires without going into the fraud aspect on the remote possibility that a bankruptcy might be filed.

5 Bankr.Ct.Dec. 954 at 957. Also see 1A *Collier on Bankruptcy* § 17.16 (14th ed. 1975).

Although the above case represented the majority opinion on this issue, there were cases holding otherwise. However, the Supreme Court resolved the issue in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), and was in accord with the *In re Pigge* rationale. In *Brown*, the Supreme Court stated that the case before it dealing with this issue "concerns res judicata only, and not the narrower principle of collateral estoppel." 442 U.S. 127 at 139 n.10, 99 S.Ct. 2205 at 2213 n.10, 60 L.Ed.2d 767 at 776 n.10. The Court concluded unanimously that a bankruptcy court may consider evidence extrinsic to the judgment and record of a prior state court suit when determining whether a debt previously reduced to a judgment in the state court is dischargeable under § 17 of the Bankruptcy Act since res judicata does not bar a creditor from offering additional evidence. Therefore, even though a state court action may be a contract action, the plaintiff is not foreclosed from offering additional evidence nor from having the bankruptcy judge review the previous record thoroughly (i. e. look behind the judgment itself to determine if the elements of § 17 are satisfied). This is exactly what the Court in *In re Webster* did. In the § 17(a)(7) case, the court looked closely at the state court action transcript to determine if elements essential to a finding of nondischargeability under § 17(a)(7) were presented and proven.

Based on the above discussion, there are two principles that must be applied to the case at hand. First, any issues which were actually and necessarily decided in the state court action are precluded from relitigation. Thus, any resolved issues in the contract cause of action which are also elements of Tickner's § 17(a)(2) or (4) complaint must stand, since these kinds of findings of fact in the prior case which were necessarily determined and actually tried must be accepted on each relevant dischargeability element.

■ Secondly, as to those elements which were not decided previously, and thus not subject to issue preclusion, this court is free to look not only to the judgment itself in the prior action (as in the case of a state court fraud action and a subsequent § 17 complaint), but the court may also look to the record itself and other extrinsic evidence, if offered, in order to best determine if these things make out a case under § 17 of the Bankruptcy Act.

■ In the case at bar, the plaintiff showed that she had an oral contract with the defendant, Allen, to sell tickets and to arrange for ticket takers for a performance

by the United States Marine Band at the Temple Auditorium. She contended, based upon estimates made by herself and others, that the defendant shorted her $4,378.50 in the ticket sales. Basically, she proved through herself and three other witnesses that the Temple Auditorium was approximately 99% and 75% occupied for the matinee and evening performances, respectively. The defendant's proof consisted of the observation by himself, the ticket takers and a spotlight technician that the attendance at the concert corresponded to the box office receipts which represented an attendance of 59% and 50% at the two performances. The jury returned a verdict in favor of the plaintiff in the amount of $2,189.25 which the judge set aside and ordered a new trial on the issues of liability and damages. The Appellate Division of the State Supreme Court unanimously set aside the verdict holding that the verdict was not a compromise but was merely a determination of the amount of damages to be awarded. The theory that the plaintiff tried the case on was that Allen, in concert with the ticket takers, sold tickets, which were not torn up at the door, but were returned to him. He in turn returned them to Mrs. Tickner as being unsold tickets. Therefore, the State Court jury decided all the issues which were necessary to prove a false pretense objection to discharge under § 17(a)(2) of the Bankruptcy Act. The jury's verdict must be accepted by this Court as being determinative of the issue and the debt owing from Allen to Tickner is not discharged.

The second matter which was tried at the same time as the prior matter was an objection to the debtor's claim of exemption and the trustee's allowance thereof. The plaintiff predicated his objections on the new Bankruptcy Code. In fact, the objections should have been predicated upon the Bankruptcy Act which was in effect at the time of the filing of the petition in bankruptcy.

In any event, the debtor's schedules did not disclose a diamond wedding ring, three pistols, an alleged interest in a motor home and an alleged interest in a Community Savings Bank savings account.

The testimony disclosed that the motor home was bought by his wife. The bank accounts were owned in the wife's name. The debtor did own a diamond ring of the value of $750 and three pistols. These later items were disclosed to the trustee at the first meeting and an exemption was claimed for the wedding ring under CPLR 5205 of the State of New York. The three guns were accounted for to the trustee. The nondisclosure of the wedding ring, and the pistols were inadvertent. They were disclosed to the trustee in plenty of time for him to liquidate those he had a right to. Therefore, the objection to the trustee's report of exemptions and the claim of exemption by the debtor is denied.

This Memorandum and Decision shall constitute Findings of Fact and Conclusions of Law in accordance with Rule 752 of the Rules of Bankruptcy Procedure.