**In The Matter Of Robert E. SUPPLE, Jr., Debtor.**

**MA&M INCORPORATED, Plaintiff,**

v.

**Robert E. SUPPLE, Jr., Defendant.**

**Bankruptcy No. 2–80–01314.
Adv. No. 2–81–0089.**

United States Bankruptcy Court, D. Connecticut.

Oct. 21, 1981.

William P. Borchert, Hartford, Conn., for plaintiff.

Elizabeth B. Leete, Hartford, Conn., for defendant.

## MEMORANDUM AND DECISION

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

The matters before the court are cross motions for summary judgment.

## BACKGROUND

Robert E. Supple (debtor) filed a voluntary Chapter 7 petition on December 31, 1980. He listed MA&M Incorporated (plaintiff) as a creditor in the amount of $80,066.60 and indicated its claim was represented by a "Promissory Note, Judgment." Within the time limited, the plaintiff filed a complaint to determine the dischargeability of the scheduled debt. The plaintiff referred to itself both as a judgment creditor pursuant to a "Judgment on Stipulation" entered by the Connecticut Superior Court on January 11, 1979, and as the holder of a promissory note dated September 7, 1978 executed by the debtor. The judgment on stipulation, attached as an exhibit to the complaint, recites that a written stipulation had been filed with the court, by Theresa D. Supple and Robert E. Supple, Jr., and then proceeds as follows:

> The Court, having heard the parties on the issues, finds that Judgment in accordance with this Stipulation may enter and approves the same.

WHEREUPON, IT IS ADJUDGED, that the plaintiff recover of the defendants, Theresa D. Supple and Robert E. Supple, Jr., the sum of One Hundred Twenty-Two Thousand Dollars ($122,000.00) and further finds:

1. That Theresa D. Supple and Robert E. Supple, Jr., did, in the civil sense, willfully convert property of the Plaintiff to their own use in the amount of One Hundred Twenty-Two Thousand Dollars ($122,000.00).

2. That the Defendants Theresa D. Supple and Robert E. Supple, Jr. are liable in the amount of One Hundred Twenty-Two Thousand Dollars ($122,-000.00) to the Plaintiff, such liability arising from civil fraud, and/or misappropriation while Theresa D. Supple acted in a fiduciary capacity with reference to the Plaintiff.

3. That the liability created by such tortious actions on the part of the Defendants shall be a joint and several liability and shall not be dischargeable in bankruptcy.

The court further finds that:

1. No costs shall be taxed in this case;

2. Mr. Robert E. Supple, Jr. is not admitting any criminal activity on his part by agreeing to this Stipulation.

This judgment, in addition to the signature of the Court, Naruk, J., also contains the signatures of an attorney for the plaintiff and an attorney for the debtor.

A promissory note, dated September 7, 1978 in the amount of $122,000.00, jointly signed by Theresa D. Supple (Theresa) and the debtor was also affixed to the complaint as an exhibit. The note calls for monthly payments of $508.33, without interest, has a 30-day default clause, and includes the following paragraph:

The makers of this Note by the execution hereof certify and affirm that this Note is a liability for willful and malicious conversion of the property of another and/or was created by fraud, embezzlement, misappropriation or defalcation while acting in a fiduciary capacity as set forth in a Judgment in Accordance with Stipulation rendered in a tort civil action in Superior Court at Hartford, Connecticut, which action bears No. 212505, and as such this Note is not dischargeable in bankruptcy.

The plaintiff's dischargeability complaint alleges in the first count that the debt which the debtor seeks to discharge is one based on embezzlement and fraud; in the second count, that the debt arises out of a willful and malicious conversion of property of the plaintiff; and, in the third count, that the debtor falsely represented to the plaintiff that he would not and could not obtain a discharge of the debt in bankruptcy and that the plaintiff reasonably relied upon such representations in forgoing the option of pursuing further criminal and civil remedies.

The debtor's answer admits that Theresa, the debtor's wife, committed a fraud upon the plaintiff, and willfully converted the plaintiff's property, but denies that the debtor was a participant, and denies the allegations contained in the third count. The debtor pled as a special defense that he "was under duress when he agreed to the Judgment on Stipulation" and when he "signed the note." The plaintiff filed a motion for summary judgment in its favor on the second and third counts of the complaint asserting that no genuine issue of a material fact exists and that the debtor is barred by the doctrines of collateral and equitable estoppel from obtaining a discharge of the debt of the plaintiff. The debtor denies that the plaintiff is entitled to summary judgment on these two counts and, in turn, seeks summary judgment in his favor on all three counts of the complaint.

The material and undisputed facts, taken from the pleadings and the various affidavits filed with the motions, disclose that Theresa, while working for the plaintiff as a bookkeeper, embezzled the sum of $122,-000.00 over a period of ten years starting in 1968. In September, 1977, the plaintiff started a civil action against Theresa, the debtor, and certain relatives of both, seeking to recover the embezzled funds. The

plaintiff alleged that the debtor had received monies or other property from Theresa when he either knew or should have known that these monies were obtained fraudulently by her. In March, 1978, Theresa was arrested on charges of larceny and retained F. Mac Buckley as her attorney. The debtor was represented by Attorney Joseph E. Fazzano. The debtor, in the civil action on May 22, 1978, was deposed by the plaintiff, but he refused to answer any questions which he asserted might tend to incriminate or degrade him. The unanswered questions dealt with any knowledge he had of his wife's embezzlement of funds from the plaintiff. Theresa pleaded *nolo contendere* to the criminal charges, and she and the debtor were advised by Attorney Buckley that if acceptable restitution were made to the plaintiff, Theresa would undoubtedly receive a shorter sentence than otherwise. On September 7, 1978, Theresa was in court for sentencing. Both she and the debtor were advised by Attorney Buckley that she would receive a sentence of two and one-half to five years in jail without restitution and perhaps as little as six months with restitution. It was at this time that Theresa and the debtor agreed to sign the promissory note and other documents prepared by the plaintiff's attorney. A written stipulation which stated that the debtor and Theresa "did maliciously and willfully convert property of the plaintiff in the amount of $122,000.00" was presented to the debtor but not signed since Attorney Fazzano was not present, and Attorney Buckley advised the debtor that Attorney Fazzano would have to execute it on the debtor's behalf. Judge Naruk was then advised as to the terms of restitution, and Theresa was sentenced to one year in jail, six months suspended and an additional period of probation. Three months later, on

December 5, 1978, the debtor appeared with Attorney Donald Massey from Attorney Fazzano's office before Judge Naruk in connection with the civil suit. Judge Naruk questioned the debtor as to whether he understood that the judgment to be entered in the civil suit was one based on a "willful tort" and therefore nondischargeable in bankruptcy. The court then orally entered the judgment which thereafter was reduced to the written judgment as set forth above, with the endorsements by the plaintiff and the debtor, and signed by the court on January 11, 1979.

The debtor's affidavit accompanying his motion for summary judgment states that during the years Theresa was embezzling funds from the plaintiff, he believed she earned everything she brought home. He avers that he signed the promissory note on September 7, 1978, because he wanted his wife to receive as short a sentence as possible, and that he was "tremendously upset" at the time of the signing. Theresa's affidavit says that she never told her husband she was embezzling money from the plaintiff.

The plaintiff argues that, as to the second count of its complaint, the judgment entered against the debtor by the Connecticut Superior Court established the essential elements of a nondischargeable debt under 11 U.S.C. § 523(a)(6).[1] The plaintiff says that the debtor is collaterally estopped[2] from litigating the issue of willful and malicious injury to property in the bankruptcy court and that his attempted repudiation of the Connecticut Superior Court judgment should not be countenanced. The debtor denies that collateral estoppel can be given the state court judgment because there was no actual litigation in the state court, the judgment is deficient in that there are no

---

1. 11 U.S.C. § 523—*Exceptions to discharge.*
 (a) A discharge . . . does not discharge an individual debtor from any debt—. . .
 (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

2. In *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 699, 58 L.Ed.2d 552, 559 (1979), the Supreme Court stated that

"[c]ollateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *See also Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 976, 59 L.Ed.2d 210, 216 (1979).

findings to establish the dischargeability of the plaintiff's debt, and the state court improperly sought to usurp the function of the bankruptcy court to determine dischargeability issues.

## DISCUSSION

In determining the effect of the state court judgment on the parties, the plaintiff and the debtor engage in an analysis of the recent United States Supreme Court decision in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). As that decision indicated, prior to 1970 claims of res judicata were rarely heard in bankruptcy courts since issues as to whether or not a debt was dischargeable were decided typically in state courts. 442 U.S. at 129–30, 99 S.Ct. at 2208, 60 L.Ed.2d at 770. But since the 1970 amendments to § 17 of the Bankruptcy Act of 1898, and continuing under § 523 of the Bankruptcy Reform Act of 1978, Congress has required that creditors apply to the bankruptcy court to adjudicate certain dischargeability issues.[3] In *Brown*, the Supreme Court resolved a conflict among the federal circuit courts by declaring that the doctrine of res judicata did not confine the bankruptcy court to the judgment in a state court proceeding and that a creditor could offer additional evidence in bankruptcy court as to the nondischargeability of a debt. The issue in *Brown* arose on a motion for summary judgment when the debtor claimed that where a state court judgment against the debtor was granted by stipulation without reference to any fraud or wrongdoing, the doctrine of res judicata prevented litigation of all grounds for recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceedings.

While the *Brown* decision resolved a conflict concerning the doctrine of res judicata, it was far less instructive as to the proper role of collateral estoppel in bankruptcy

proceedings. In an often cited footnote, the Court added:

> This case concerns res judicata only, and not the narrower principle of collateral estoppel. Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit. (citations omitted) If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of these issues in the bankruptcy court.
>
> Because respondent does not contend that the state litigation actually and necessarily decided either fraud or any other question against petitioner, we need not and therefore do not decide whether a bankruptcy court adjudicating a § 17 question should give collateral-estoppel effect to a prior state judgment. In another context, the Court has held that a bankruptcy court should give collateral-estoppel effect to a prior decision. *Heiser v. Woodruff*, 327 U.S. 726, 736, 66 S.Ct. 853, 857–58, 90 L.Ed. 970 (1946). The 1970 amendments to the Bankruptcy Act, however, have been interpreted by some commentators to permit a contrary result. See 1A J. Moore, J. Maulder & R. Oglebay, Collier on Bankruptcy § 17.16[6], p. 1650.2 (14th ed. 1978); Countryman, The New Dischargeability Law, 45 Am.Bankr. L.J. 1, 49–50 (1971). But see 1 D. Cowans, Bankruptcy Law and Practice § 253 (1978).

442 U.S. at 139 n.10, 99 S.Ct. at 2213 n.10, 60 L.Ed.2d at 776 n.10. Although stating that issues adjudicated by a state court using standards identical to those of § 17 would bar relitigation of these issues in bankruptcy courts, the Court indicated that

---

**3.** Section 17 of the Bankruptcy Act of 1898 corresponds substantially to § 523 of the Bankruptcy Reform Act of 1978 and courts have found the rationale of *Brown* applicable to § 523 of the Bankruptcy Reform Act. *See In re*

*Eskenazi*, 6 B.R. 366, 368, 6 B.C.D. 1140, 1141 (Bkrtcy.App.Panel, 9th Cir. 1980); *In re Trewyn*, 12 B.R. 543, 545 (Bkrtcy.W.D.Wis.1981); *In re Whitmore*, 7 B.R. 835, 838, 7 B.C.D. 41, 43 (Bkrtcy.N.D.Ga.1980).

it was not deciding the issue. In addition, the Court cited authorities which oppose giving collateral estoppel effect to state court determinations. Thus, the Supreme Court's position on the proper use of collateral estoppel in the bankruptcy court on dischargeability matters is unclear. *See In re Cooney*, 8 B.R. 96, 98 (Bkrtcy., W.D.Ky. 1980).

While no decision of the court of appeals in this circuit has addressed the issue of collateral estoppel in bankruptcy proceedings, there are three lower court decisions which have. *In re Herman*, 6 B.R. 352 (D.C., S.D.N.Y.1980); *In re Iannelli*, 12 B.R. 561 (Bkrtcy., S.D.N.Y.1981); *In re Allen*, 3 B.R. 355 (Bkrtcy., W.D.N.Y.1980). In upholding an order of a bankruptcy court granting a judgment creditor's motion for summary judgment, the district court in *Herman* held that a limited application of the doctrine of collateral estoppel was proper. The opinion noted that the bankruptcy judge had granted the motion after reviewing the record in state court proceedings and determining that there was an "identity of standards" between the elements of proving a debt nondischargeable under § 17(a) of the Bankruptcy Act and the state court findings in the case. In the *Allen* decision, the court applied the doctrine of collateral estoppel to preclude a debtor from relitigating a false pretense objection to discharge under § 17(a)(2) of the Bankruptcy Act when a jury in state court returned a verdict against the debtor in a breach of contract action based on a fraudulent scheme for selling tickets. In *Iannelli*, however, a bankruptcy court refused to give collateral estoppel effect to a judgment taken by default against a debtor in a state court proceeding. The court concluded that a judgment by default failed to satisfy the requirement that a controversy be actually litigated before use of collateral estoppel is proper.[4] 12 B.R. at 563. The court also concluded that even if the underlying securities fraud allegations had been litigated, the judgment creditor would not be entitled to a declaration of nondischargeability because of differing standards of proof regarding exceptions to discharges and securities violations.[5]

In determining whether or not to give collateral estoppel effect to prior judgments, all three courts cited with approval a four-part test employed by a number of courts which have addressed collateral estoppel issues.[6] In order to bar relitigation of a dischargeability matter in a bankruptcy court based upon a judgment obtained in a previous action, the bankruptcy court would have to find that

(1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) it must have been determined by a valid and final judgment, and (4) the determination must have been essential to the final judgment.

*In re Ross*, 602 F.2d 604, 608 (3rd Cir. 1979); *see* 1B J. Moore & T. Currier, *Moore's Federal Practice* ¶ 0.443[1] (2nd ed. 1980). Most courts have either adopted this test or some variation of it in determining when the doctrine of collateral estoppel bars relitigation of a dischargeability matter in bankruptcy court.[7] Because decisions in this cir-

---

4. In general, default or consent judgments have not been given collateral estoppel effect in bankruptcy cases. *In re McMillan*, 579 F.2d 289, 293 (3rd Cir. 1978); *Franks v. Thomason*, 4 B.R. 814, 821 (D.C., N.D.Ga.1980). *But see In re Nadler*, 424 F.Supp. 1106, 1108 (E.D.Mo. 1976) (consent judgment equivalent to admission by defendant that facts existed on which decree rests).

5. The court stated that "plaintiff must prove a § 17 exception by *clear and convincing evidence.* In the present case, the only violations alleged . . . were securities violations and the standard of proof of violation of a securities

regulation is a fair preponderance of evidence." 12 B.R. at 564 (emphasis in original).

6. *See In re Ross*, 602 F.2d 604 (3rd Cir. 1979); *In re McMillan*, 579 F.2d 289 (3rd Cir. 1978); *In re Webster*, 1 B.R. 61 (Bkrtcy., E.D.Va.1979). *See also Haize v. Hanover Ins. Co.*, 536 F.2d 576 (3rd Cir. 1976).

7. For decisions adopting comparable tests or criteria, see *Spilman v. Harley*, 656 F.2d 224, 228–29 (6th Cir. 1981); *In re Kasler*, 611 F.2d 308, 309–10 (9th Cir. 1979); *Franks v. Thomason*, 4 B.R. 814, 821 (D.C., N.Ga.1980); *In re Whitmore*, 7 B.R. 835, 838, 7 B.C.D. 41, 43

cuit have employed this test, and because the plaintiff and the debtor discuss it in their respective briefs, I will adopt this test in reaching my conclusions of law.

Neither party has argued that the stipulated judgment entered in superior court failed to satisfy the third requirement of the test as to validity and finality. The debtor contends that the stipulated judgment should not be given collateral estoppel effect because it failed to satisfy the remaining requirements of the test. Specifically, the debtor argues that the stipulated judgment was never actually litigated; the finding of willful conversion was not essential to the final judgment; and there is no way to determine whether the finding of willful conversion recited in the stipulated judgment is identical to a finding of willful and malicious injury necessary under § 523(a)(6) to render a debt nondischargeable. For purposes of this decision, only the debtor's last contention will be discussed.

 As the *Herman* and *Iannelli* decisions make clear, a bankruptcy court cannot give collateral estoppel effect to a prior state court adjudication if the issue before the bankruptcy court differs from the issue which was before the state court. The standards employed by the state court in reaching its decision must comport with federal standards. To insure such an identity of standards,[8] a bankruptcy court must scrutinize the entire record of the state court proceedings. In the present case, the

record consists of pleadings filed in state court, a promissory note signed by the debtor, a Judgment on Stipulation also signed by the debtor, and a transcript of the proceedings before Judge Naruk when the Judgment on Stipulation was agreed to by the parties. That record is silent as to what facts convinced the court that the debtor had willfully converted the plaintiff's property. In addition, the record fails to indicate whether the state court judge found the debtor's conversion of the plaintiff's property willful under the present federal standard of § 523(a)(6) or willful in the sense of pre-Code decisions which had interpreted willful to include a "reckless disregard" standard. The legislative history of § 523(a)(6) states that if a debt arises from willful conduct which is in reckless disregard of the property of another, that debt is still dischargeable:

> Paragraph (6) excepts debts for willful and malicious injury by the debtor to another person or to the property of another person. Under this paragraph, "willful" means deliberate or intentional. To the extent that *Tinker v. Colwell*, 193 U.S. 473 [24 S.Ct. 505, 48 L.Ed. 754] (1902) (sic), held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled.

H.R.Rep.No.95–595, 95th Cong., 1st Sess. 365 (1977); S.Rep.No.95–989, 95th Cong., 2nd Sess. 79 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787, 6320.

---

(Bkrtcy., N.D.Ga.1980); *In re Willis*, 2 B.R. 566, 569 (Bkrtcy., M.D.Ga.1980); *In re Manitta*, 1 B.R. 393, 394 (Bkrtcy., C.D.Cal.1979); *In re Meade Land & Development Co., Inc.*, 1 B.R. 279, 284 (Bkrtcy., E.D.Pa.1979).
Some courts continue to follow pre-*Brown* decisions which hold that prior judgments should not be given collateral estoppel effect. Generally, these decisions hold that a prior judgment establishes only a prima facie case of nondischargeability which the debtor is entitled to rebut. *In re Rahm*, 641 F.2d 755, 757 (9th Cir. 1981); *Carey Lumber Co. v. Bell*, 615 F.2d 370, 377 (5th Cir. 1980); *Lasagna v. Foster*, 609 F.2d 392, 396 (9th Cir. 1979); *In re Houtman*, 568 F.2d 651, 655 (9th Cir. 1978); *In re Pigge*, 539 F.2d 369 (4th Cir. 1976); *In re Day*, 4 B.R. 750, 755 (D.C., S.D.Ohio 1980); *In re Eskenazi*, 6 B.R. 366, 368–69, 6 B.C.D. 1140, 1141 (Bkrtcy.

App.Panel, 9th Cir. 1980); *In re Rainey*, 1 B.R. 569, 570–71 (Bkrtcy., D.Or.1979). *See generally* Note, *Res Judicata and Collateral Estoppel in Bankruptcy Discharge Proceedings*, 37 Wash. & Lee L.Rev. 281 (1980).

8. The "identity of standards" test had its origins in the footnote in the *Brown v. Felsen* decision discussing collateral estoppel:

> If, in the course of adjudicating a state-law question, a state court should determine factual issues using *standards identical* to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of these issues in bankruptcy court.

442 U.S. at 139 n.10, 99 S.Ct. at 2213 n.10, 60 L.Ed.2d at 776 n.10 (emphasis added).

The dilemma of what the state court meant in its judgment by the term willful conversion is further aggravated by the lack of any reference to malicious conduct on the part of the debtor. Although the state court judge may have intended the word willful to characterize conduct which under federal standards is both willful and malicious, nothing in the record makes this apparent. Without specific findings of fact from the state court, this court cannot conclude that the state court judgment was predicated upon a finding of willful and malicious injury employing standards of review identical to § 523(a)(6). Consequently, this court cannot ascertain whether the issue sought to be precluded here, the nature of the debtor's conduct pertaining to the injury to the plaintiff's property, is identical to the issue which formed the basis for the judgment on stipulation entered in state court. It would be error, therefore, to give collateral estoppel effect to the state court judgment on the plaintiff's motion for summary judgment on the second count, and the motion is hereby denied. *See Spilman v. Harley*, 656 F.2d 224 (6th Cir. 1981).

In seeking summary judgment on the third count, the plaintiff relies on the actions of the debtor in consenting to the entry of the judgment on stipulation and executing the promissory note, as equitably estopping the debtor. In view of what already has been stated concerning the collateral estoppel argument of the second count and a denial by the debtor of the factual basis for the third count, the issue raised by the third count cannot be disposed of by summary judgment. On his part, the debtor seeks summary judgment in his favor on all three counts of the complaint. Since, as noted, there are genuine issues as to material facts in this proceeding, the debtor is not entitled to summary judgment on his cross motions.