In re Joseph SPECTOR, Debtor.

REVELLE MOTORS, INC. and Jack D. Revelle, Plaintiffs,

v.

Joseph SPECTOR, Ind. and as General partner in Spector Wholesale Co., Defendant.

In re Stephen SPECTOR, Debtor.

REVELLE MOTORS, INC. and Jack D. Revelle, Plaintiffs,

v.

Stephen SPECTOR, Ind. and as General partner in Spector Wholesale Co., Defendant.

Bankruptcy Nos. 81 01560, 81 01559. Adv. Nos. 81 0275, 81 0274.

United States Bankruptcy Court, N. D. New York.

July 20, 1982.

---

Goldberg, Sanders & Talev, Syracuse, N.Y., for plaintiff; Harold P. Goldberg, Syracuse, N.Y., of counsel.

Menter, Rudin & Trivelpiece, P.C., Syracuse, N.Y., for defendants; David Pelland, Syracuse, N.Y., of counsel.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

LEON J. MARKETOS, Bankruptcy Judge.

### Statement of the Cases

On October 30, 1981, Joseph and Stephen Spector, individually and as General Partners in Spector Wholesale Company (hereinafter, the Debtors), each filed a separate petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.* (Supp. IV 1980) (hereinafter, the Code). Pursuant to Rule 701(7) of Bankruptcy Procedure, Revelle Motors, Inc. and Jack D. Revelle (hereinafter, Creditors) joined as plaintiffs and filed identical pleadings entitled "OBJECTIONS TO DISCHARGE" against each Debtor. Yet, particular debts are the subject matter of the complaints and the Creditors cite the Court to numerous subdivisions of § 523(a) of the Bankruptcy Code rather than Code § 727(a) and (c)(1). *See* 11 U.S.C. § 727(a) and (c)(1).

The Creditors' pleadings allege two causes of action. The gravamen of the first cause of action is that the Debtors, while making payment on an underlying contractual agreement, drew and delivered numerous checks to the corporate Creditor when it was known by the Debtors on each occasion that (1) such checks were uncollectible and non-negotiable, and (2) such utterances were done "willfully, knowingly and fraudulently intended to defraud" the Creditors of the sum owing. It is further alleged that on September 2, 1980, the Creditors herein obtained an order adjudging that the Debtors were liable to the Creditors in the aggregate sum of $15,725.00 together with costs and disbursements of that state court proceeding (totalling $16,249.78). Furthermore, the Creditors allege such judgment is *res judicata* against the Debtors. Therefore, the Creditors' dischargeability complaints request a judgment against each Debtor for $16,249.78, and that such sum be adjudged and decreed to be non-dischargeable in the bankruptcy proceeding of each respective Debtor pursuant to § 523(a)(2) of the Bankruptcy Code.

Pursuant to Rule 756 of Bankruptcy Procedure which incorporates Rule 56(d) of Federal Civil Procedure, the Creditors move in each of the above adversary proceedings for partial summary judgment on each dischargeability complaint's first cause of action. Because these motions are premised on the identical legal arguments and exhibits, the Court's MEMORANDUM–DECISION, *infra*, operates to decide each motion concerning each of the individual Debtors, Joseph Spector and Stephen Spector, respectively.

## FINDINGS OF FACT

The Creditors' motion papers contain several exhibits which remain uncontroverted by the Debtors and lead this Court to find the following facts undisputed.

1. Prior to the Debtors' petition in bankruptcy, the Hon. Donald H. Miller of the Supreme Court of New York awarded the Creditors a "JUDGMENT IN TORT" against the Debtors. *JACK D. RE-VELLE AND REVELLE MOTORS, INC. vs. JOSEPH SPECTOR AND STEPHEN SPECTOR d/b/a SPECTOR WHOLE-SALE COMPANY*, 80–4682 (Sup.Ct. Onondaga Co. September 9, 1980). Premised upon submitted pleadings and affidavits, the New York state court granted partial summary judgment

"... pursuant to Section 3213 [sic] of the New York CPLR ... and *it appearing that there was issued by the [Debtors] five bad checks amounting to $15,725.00 to the [Creditors] and that the same are outstanding and unpaid and it further appearing that as a matter of law, the same are due, owing and payable to the [Creditors] and the [Debtors] having no defense thereto* and due deliberation having been had, ... it is hereby

ORDERED, ADJUDGED AND DE-CREED that the [Debtors] answer in so far as it pertains to causes of action "1" through "5" of the [Creditors] complaint and the [Debtors] first affirmative defense are stricken and the [Creditors] motion pursuant to Section 3213 of the CPLR is granted as to the first five causes of action set forth in the [Creditors] complaint. And it is further

ORDERED, ADJUDGED AND DE-CREED that the [Creditors] are entitled to and hereby are granted judgment against the [Debtors] pursuant to the motion as aforesaid and that part thereof *hereby granted in the sum of $15,725.00 IN TORT* together with costs and disbursements and interest thereon from March 12, 1980...."
(Emphasis added).

The balance of the motion seeking judgment on five other causes of action was denied and referred to the trial calendar for determination. There is no indication that this judgment is anything but final with no appeal pending.

2. In the state court complaint by the Creditors, the first five causes of action are premised on the Debtors' utterance of five checks to the corporate Creditor for monies due and owing under an agreement between the individual Debtors and the individual Creditor herein. The gravamen of such conduct is that with each check utterance for payment of the purchase of an automobile

the aforesaid check at the time it was drawn and delivered to the corporation, it was known by the [Debtors] to be uncollectable (sic) and non-negotiable and was uttered by them for good and valuable consideration which they willfully, knowingly and fraudulently intended to defraud the [Creditors] in the sum ... which has been duly demanded of the [Debtors] on numerous occasions and which they continue to fraudulently withhold payment.

(Creditors' state court complaint, ¶¶ 7, 11, 15, 19, and 23). The total of the five checks is $15,725.00.

3. The Debtors' state court answer admitted the establishment of the underlying contract. All other allegations of the complaint were specifically denied. The Debtors' first affirmative defense was that

(T)he first five causes of action set forth in [Creditors] Complaint fail to state a cause of action upon which relief can be granted as there is no allegation that [Creditors] gave [Debtors] notice of said dishonor and made demand for payment as is required by the Uniform Commercial Code as a condition precedent to suit.

(Debtors' state court Answer, ¶ 6).

4. In the Creditors' state court motion for partial summary judgment both parties moving and opposing papers were supported by affidavits. The one Debtor,

Stephen Spector, specifically attested to a collateral agreement concerning the Creditors' right of immediate presentment of the uttered checks. Furthermore, he specifically denied any intent to defraud the Creditors. (Stephen Spector affidavit 8/29/80 ¶ 5). There was *no* affidavit of Joseph Spector in opposition to the Creditors' motion.

## DISCUSSION

Although the parties' memoranda of law expand their respective discussions to numerous factual and substantive law issues in these particular dischargeability proceedings, there is but a singular issue on these motions for summary judgment. The Creditors have moved for partial summary judgment contending there are no issues of disputed material fact concerning their dischargeability complaints. *See* Fed.R.Civ.P. 56(c) and (d). Each complaint's first cause of action seeks to hold certain debts of the Debtors nondischargeable in bankruptcy pursuant to Bankruptcy Code § 523(a)(2), alleging that such debts were incurred by conduct of the Debtors which was "willfully, knowingly, and fraudulently intended to defraud" the Creditors. Because there are no allegations concerning written financial statements[1] by the Debtors, the Court deems the Creditors' allegations to be under § 523(a)(2)(A) of the Bankruptcy Code, which pertains to debts "for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition." 11 U.S.C. § 523(a)(2)(A).

In support of the Creditors' motions, they interpose the pre-petition state court judgment granted to the Creditors on those debts which constitute the Creditors' first cause of action in the dischargeability complaint. The issue before this Court is whether the aforesaid state court judgment precludes this Court's relitigation of factual allegations in dischargeability by operation of the judicial doctrines of *res judicata* and collateral estoppel.

 The Creditors' invocation of the doctrine of *res judicata* in these dischargeability proceedings is inapposite. Clearly, the state court proceedings from which the judgment was rendered were *not* based on the federal legal issue of dischargeability under § 523 of the Bankruptcy Code.[2] The doctrine of *res judicata* is not operative in dischargeability proceedings in a bankruptcy court. *See United States Life Title Insurance Company of New York v. Dohm,* 19 B.R. 134, 136 (N.D.Ill.1982) citing to *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *see also Matter of Eskenazi,* 6 B.R. 366, 368, 6 BCD 1140, 1141, 3 C.B.C.2d 20 (Bkrtcy. 9th Cir. 1980); *Matter of Supple,* 14 B.R. 898, 902, 8 BCD 544, 546, 5 C.B.C.2d 1081 (Bkrtcy.D.Conn.1981); *In re Greenblatt,* 8 B.R. 994, 996 (Bkrtcy.E.D.N.Y.1981).

 This Court shall construe the Creditors' interposition of the state court judgment as attempting to collaterally estop[3]

---

**1.** The execution and issuance of negotiable instruments, *i.e.*, checks, are not "financial statements" under the federal bankruptcy law provisions which concern dischargeability. *See Matter of Murray,* 7 B.R. 899, 900 (Bkrtcy.W.D. Mo.1981) (construing § 523(a)(2)(A) of the Bankruptcy Code).

**2.** In fact, the two causes of action within the Creditors' complaints allege the particular statutory exceptions to dischargeability in bankruptcy which are determinations exclusively reserved to the U.S. bankruptcy courts. *See* 11 U.S.C. § 523(c); *Matter of Eskenazi,* 6 B.R. 366, 368, 6 BCD 1140, 1141, 3 CBC2d 20 (Bkrtcy. 9th Cir. 1980); *In re Peterman,* 5 B.R.

687, 690, 6 BCD 851, 853, 2 C.B.C.2d 1048 (Bkrtcy.E.D.Pa.1980).

**3.** There is a distinction between the doctrines of *res judicata* and collateral estoppel. The *res judicata* doctrine requires that a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the *same* cause of action. "Under the doctrine of collateral estoppel, . . . the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Company, Inc. v. Shore,* 439 U.S. 322, 326 n.5, 99 S.Ct. 645, 649 n.5, 58 L.Ed.2d 552,

relitigation of factual issues which were germane to the state court proceedings and which may again be material to these dischargeability proceedings.[4] "Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in [the] prior [action]." *Brown v. Felsen*, 442 U.S. at 139 n.10, 99 S.Ct. at 2213 n.10, 60 L.Ed.2d at 776 n.10. A bankruptcy court's determination of a debt as nondischargeable requires the court to review the nature of the liability as being in accordance with the applicable provisions of § 523(a) of the Bankruptcy Code.

■ The party who asserts collateral estoppel has the burden of proving all the requisites for its application. *See Spilman v. Harley*, 656 F.2d 224, 229 (6th Cir. 1981) (dischargeability proceeding); *Hernandez v. City of Los Angeles*, 624 F.2d 935, 937 (9th Cir. 1980) (civil rights action under 42 U.S.C. § 1983); *Matter of Merrill*, 594 F.2d 1064, 1067 (5th Cir. 1979) (dischargeability proceeding). "To sustain this burden[,] a party must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Hernandez, supra*, 624 F.2d at 937; *see Allen v. Zurich Insurance Company*, 667 F.2d 1162, 1166 (4th Cir. 1982). It is well settled that "[r]easonable doubt as to what was decided by a prior judgment should be resolved against using it as an estoppel." *Kauffman v. Moss*, 420 F.2d 1270, at 1274 (3d Cir.), *cert. denied*, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970) citing to *Northern Oil Company, Inc. v. Socony Mobil Oil Company, Inc.*, 368 F.2d 384, 388 (2d Cir. 1966); *see Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980) (per curiam).

■ Within the Second Circuit, bankruptcy courts have uniformly applied the doctrine of collateral estoppel in dischargeability proceedings under both the repealed Bankruptcy Act of 1898 ("B.A.") and the now effective Bankruptcy Reform Act of 1978 ("B.R.A.") codified as the Bankruptcy Code, *supra*. *See, e.g., In re Allen*, 3 B.R. 355 (Bkrtcy.W.D.N.Y.1980) (B.A.); *In re Herman*, 6 B.R. 352 (S.D.N.Y.1980) (affirmance of bankruptcy court decision under B.A.); *In re Iannelli*, 12 B.R. 561 (Bkrtcy.S.D.N.Y.1981) (B.A.); *Matter of Supple, supra* (B.R.A.); *In re Sloan*, 18 B.R. 1021 (Bkrtcy.E.D.N.Y.1982) (B.R.A.). All these courts have followed a well recognized four-part test to determine whether or not to give collateral estoppel effect to a pre-petition judgment which could thereby bar a bankruptcy court's relitigation of factual issues and legal conclusions decided therein when such judgment is interposed in a dischargeability proceeding. The elements of the test for application of collateral estoppel are:

(1) The issue sought to be precluded must be the same issue as that involved in the prior action;

(2) the issue must have been actually litigated;

(3) that issue must have been determined by a valid and final judgment; and

(4) the determination must have been essential to the final judgment.

*See Matter of Supple, supra*, 14 B.R. at 903, 8 BCD at 547 and cases and authorities cited therein. The most intricate element of the test is the requisite "identity of issue" component embodied in the first prong. The *Supple* court observed:

[A] bankruptcy court cannot give collateral estoppel effect to a prior state court adjudication if the issue before the bankruptcy court differs from the issue which was before the state court. *The standards employed by the state court in reaching its decision must comport with federal standards. To insure such an*

559 n.5, (1979); *see also Matter of Allen*, 3 B.R. 355, 357 (Bkrtcy.W.D.N.Y.1980).

**4.** Clearly, "[c]ollateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Company, Inc., supra*, 439 U.S. at 326, 99 S.Ct. at 649, 58 L.Ed.2d at 559 (footnote omitted) (citation omitted).

*identity of standards, a bankruptcy court must scrutinize the entire record of the state court proceedings.*

14 B.R. at 904, 8 B.C.D. at 547–48 (footnote omitted) (emphasis added). This first prong of the test is put into dispute by the Debtors concerning the prior state court judgment.

█ As applied to the Creditors' state court judgment, the Debtors' position concerning the first prong is that "there is an insufficient record of the State Court proceeding to determine whether or not res judicata or collateral estoppel applies" in this case. (Debtors' memorandum of law at 3). The Debtors elaborate that the prior state court judgment (a partial summary judgment premised on undisputed material issues of fact) was to an extent decided from the bench and "not supported by any other written findings of fact [,] . . . [therefore] it would . . . be impossible for this [bankruptcy] Court to determine the standards used in making those determinations." (*Id.* at 7).[5]

█ The Creditors' prior state court judgment is labelled "JUDGMENT IN TORT" and is premised on the state court pleadings which alleged fraudulent utterances of checks by the Debtors. The Court surmises that the Creditors wish to collaterally estop any relitigation of the "actual fraud" issue under § 523(a)(2)(A) which would be the ultimate mixed fact and law issue concerning the nature of the Debtors' liability for dishonored checks. Although the state court judgment makes no specific finding of fraudulent intent as alleged, such a specific finding is a necessary inference from the "JUDGMENT IN TORT". Yet, this Court's review of the state court record

which supports the judgment must also verify that an "identity of issues" exists on the fraud issue, *i.e.*, the fraud determination must rest upon standards identical with the requisite standards under § 523(a)(2)(A) of the Code. Standards for that provision require the following facts be established by a creditor:

(1) The debtor made representations of fact to the creditor;

(2) said representations were false;

(3) the debtor knowingly and fraudulently [*i.e.*, with intent and purpose to deceive] made said representations. The debtor's act must involve moral turpitude or intentional wrong. *Fraud implied in law* which may exist without imputation of bad faith or immorality *is insufficient*; and

(4) the creditor relied on the misrepresentation to its detriment.

*In re Greenblatt, supra* 8 B.R. at 997 (brackets and emphasis added).

█ The New York state law standards for a cause of action for fraud and deceit are sufficiently "identical" to the requisite elements under § 523(a)(2)(A) of the Bankruptcy Code. *Compare Jo Ann Homes at Bellmore, Inc. v. Dworetz*, 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 803, 250 N.E.2d 214, 217 (1969) *with In re Greenblatt, supra*, 8 B.R. at 997; *see also Matter of Herman, supra*, 6 B.R. at 357 n.14 (court concludes identity of standards between New York law and § 17a(2) of repealed Bankruptcy Act of 1898. Furthermore, a clear and convincing standard of proof governs on the fraud issue in both the Code's § 523(a)(2)(A) dischargeability[6] and New York state law[7] actions.

---

5. In comparison to a judgment with specific findings on contested facts, a summary judgment under the federal rules of civil procedure based on pleadings and affidavits is equally regarded as a final judgment on the merits for purposes of applying the doctrine of collateral estoppel. *See Exhibitors Poster Exchange, Inc. v. National Screen Service Corporation*, 517 F.2d 110, 115–16 (5th Cir. 1975), *reh'g denied*, 520 F.2d 943, *cert. denied*, 423 U.S. 1054, 96 S.Ct. 784, 46 L.Ed.2d 643 (1976); *In re Falstaff Brewing Corporation Antitrust Litigation*, 441 F.Supp. 62, 66 (E.D.Mo.1978). *See generally* 18

C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4444 (1981).

6. *See In re Bruce*, 18 B.R. 135, 137 (Bkrtcy.D. Vt.1982); *see also In re Huckins*, 17 B.R. 620, 624 (Bkrtcy.D.Me.1982); *Matter of Albritton*, 17 B.R. 555, 557 (Bkrtcy.M.D.Fla.1982); *In re Koushel*, 11 B.R. 836, 841 (Bkrtcy.E.D.Va. 1981); *In re Liberati*, 11 B.R. 54, 55–56 (Bkrtcy. E.D.Pa.1981); *In re Cappelli*, 6 B.R. 303, 304 (Bkrtcy.D.R.I.1980).

7. *See Simcuski v. Saeli*, 44 N.Y.2d 442, 452, 406 N.Y.S.2d 259, 265, 377 N.E.2d 713, 718 (1978);

■ The closest of scrutiny of the state court judgment, pleadings, and motion papers does not disclose what legal standards of fraud were implemented by the state court judge's decision. It is quite reasonable that the aforesaid state law standards were not employed in rendering the bad check liability as a "JUDGMENT IN TORT". This observation is to be distinguished from an erroneous application of the state law standards of fraud which would be binding upon this Court for purposes of collateral estoppel.[8]

■ Also, by virtue of judicial notice,[9] this Court contemplates that the finding of fraudulent "bad check" liability (later denominated a "JUDGMENT IN TORT" by Judge Miller) may arise from an *implied* fraud determination derived from the bad check law contained in § 190.-10(2)(b) of the New York Penal Laws. *See* N.Y. Penal Law § 190.10(2)(b) (McKinney 1975). Clearly, the bankruptcy standards for "actual fraud" do not countenance *implied* fraud determinations. *See In re Greenblatt, supra,* 8 B.R. at 957; *see also In re Alvarez,* 13 B.R. 571, 574 (Bankr.S.D.Fla. 1981) (commission of statutory fraud does not constitute misrepresentation or fraud under § 523(a)(2)(A) of the Code). These two potential inferences from the Creditors' proof raise a reasonable doubt whether the state court judgment embodies a determination of *actual* fraud on substantially identical standards as required under § 523(a)(2)(A) of the Code.

In the last instance, this Court must observe the well-established rule that all evidence and inferences to be drawn from the evidence of a moving party, herein the Creditors, must be construed in a light most favorable to a party opposing the motion for summary judgment. *See In re Scrimpsher,* 17 B.R. 999, 1007 (Bankr.N.D. N.Y.1982) and cases and authorities cited therein. The Court finds that the Creditors have failed to show no reasonable doubt that "identical legal standards" were utilized when determining the fraud issue in the prior state court judgment.

■ The Creditors also have interposed the state court judgment to preclude any relitigation on the amount of the alleged nondischargeable debt. The dishonored checks aggregate to the amount of $15,-725.00. The state court judgment also awarded costs, interest, and disbursements of $524.78. It is the total sum of $16,249.78 embodied in the judgment which the Creditors' allege is the extent of the nondischargeable debt from the Debtors. The issue is whether, as a matter of law, the Creditors are entitled to recover the prior costs, interest, et cetera, and the face value of the dishonored checks. The Court finds that such cost and interest assessments are for loss of use of the Creditors' rightfully due monies proximately resulting from the checks being dishonored. Should those checks be a transaction subsequently de-

---

*see also Stephenson v. Lord,* 72 A.D.2d 857, 858, 421 N.Y.S.2d 730, 731 (3rd Dep't 1979).

**8.** Basically, "[c]ollateral estoppel is by judgment . . . and a final judgment, though erroneous, is an adjudication entitled to collateral estoppel effect." 1B J. Moore, *Moore's Federal Practice* ¶ 0.443[4] at 3917 (2nd ed. 1981) (footnote omitted); *see United States v. Moser,* 266 U.S. 236, 242, 45 S.Ct. 66, 67, 69 L.Ed. 262, 265 (1924); *accord Killmer v. Village of Whitehall,* 81 A.D.2d 972, 439 N.Y.S.2d 757, 758 (3rd Dep't 1981). *Cf. Ellentuck v. Klein,* 570 F.2d 414, 425 (2d Cir. 1978) (application of *res judicata* doctrine not dependent on prior judgment being free from error). Although the precluded issues are premised on an erroneous judgment, the remedy for such erroneous judgment is a party's right of direct appeal; collateral estoppel is still applicable if the prior judgment is final and valid. *See United States Life Title Insurance Company of New York, supra,* 19 B.R. at 138. *Cf. Walsh v. International Longshoremen's Association, AFL–CIO, Local 799,* 630 F.2d 864, 869 (1st Cir. 1980) (right of direct appeal, not an undermining of the rule of *res judicata,* is the remedy for a wrong decision).

**9.** *See Lamar v. Micou,* 114 U.S. 218, 223, 5 S.Ct. 857, 859, 29 L.Ed. 94 (1885); *Saffold v. McGraw-Edison Company,* 566 F.2d 621, 623 (8th Cir. 1977) ("Federal courts must take judicial notice of the statutory and common law of any state of the union without pleading or proof.")

234

nominated as fraudulent in nature, the damages incurred besides the face value of the checks are compensable. *Cf. In re Wilson*, 12 B.R. 363, 370, 7 BCD 1061, 1065–66, 5 C.B.C.2d 342 (Bkrtcy.M.D.Tenn.1981) (court allows contractual interest rate as portion of recoverable nondischargeable debt under Code § 523(a)(2)(A)); *Nichols v. Hensler*, 528 F.2d 304, 309 (7th Cir. 1975) (court accepts lower court's interest award as having the character of the nondischargeable debt itself under § 17a(7) of the Bankruptcy Act of 1898).

### CONCLUSIONS OF LAW

Having observed the Creditors' interposed state court pleadings, motion papers, and judgment and applying the requisite test for application of the doctrine of collateral estoppel, the Court concludes that (1) the amount of the debt owing to the Creditors for dishonored checks is $16,249.78, and (2) although the issue of fraudulent utterance of such checks was necessarily determined in the state court, the judgment does not show it was determined under standards sufficiently "identical" to those required by § 523(a)(2)(A) of the Bankruptcy Code. Accordingly, the fraudulent nature of the Debtors' dishonored check debts is not an issue precluded from relitigation but rather must be tried in this Bankruptcy Court. Therefore, it is

ORDERED, the Creditors' motions for partial summary judgment on the dischargeability complaints' first cause of action are granted as to (1) the judgment debt's amount being $16,249.78, and (2) denied as to the adjudication of the judgment debt as nondischargeable in the bankruptcy proceedings of Joseph Spector and Stephen Spector, respectively.