**In re Robert Dean TOMSIC, Debtor.**

**Joseph GELLENBECK, Terry Gellenbeck, Plaintiff(s),**

v.

**Robert Dean TOMSIC, Defendant.**

**Bankruptcy No. 85–61244.
Adv. No. 85–6121.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division,
at Lafayette.

March 19, 1987.

David Chidester, Valparaiso, Ind., for defendant.

Michael Muenich, Highland, Ind., for plaintiffs.

## MEMORANDUM OPINION AND ORDER

KENT LINDQUIST, Chief Judge.

### I

### *Statement of Proceedings*

On November 29, 1985, Joseph Gellenbeck and Terry Gellenbeck (hereinafter: "Plaintiffs") filed their Adversarial Complaint and Objection to Discharge in Bankruptcy before this Court. The complaint prays that a certain state court judgment entered in favor of the Plaintiffs and against the Defendant in the Lake Superior

Court, Civil Division, sitting in Gary, Indiana, under cause no. 577–1330, captioned "Joseph Gellenbeck and Terry Gellenbeck versus Tomsic Construction Company and Tomsic & Son Builders, Inc.; Tomsic Construction Company and Tomsic & Son Builders, Inc. versus Joseph Gellenbeck and Terry Gellenbeck", on the 2nd day of August, 1982 which awarded compensatory damages in the sum of $25,979.02 to the Plaintiffs along with punitive damages in the sum of $25,979.02 to the Plaintiffs be determined nondischargeable pursuant to 11 U.S.C. § 523(a)(2) and § 523(a)(6) and that the general discharge of the Defendant be denied pursuant to 11 U.S.C. § 727 based upon the judgment entered in the state court. The specific portion of § 727 upon which the Plaintiffs rely was not specified by the Plaintiffs. On January 2, 1986, the Defendant filed his answer asserting that the Defendant disputes the findings of facts and conclusions of law submitted to the state court, which at the time of the motion were not yet approved by the state court, and that even if approved by the state court the proposed findings and conclusions, which present the facts in a most favorable manner to the Plaintiffs as matter of law create a dischargeable debt pursuant to § 727. The Defendant's amended motion for summary judgment admits that the proposed findings of fact and conclusions of law were in fact signed by the state court judge and that the judgment was in fact entered after a trial on the merits rather than by default.

The Defendant further asserts in his supporting memorandum that pursuant to Indiana law an award of punitive damages in a breach of contract action is not permitted unless fraud is proven by clear and convincing evidence, citing *Traveler's Indemnity Co. v. Armstrong*, 442 N.E.2d 349 (Ind.S.Ct.1982) and *Canada Dry Corp. v. Nehi Beverage Co.*, 723 F.2d 512 (7th Cir. 1983). The Defendant then filed a motion for summary judgment on January 21, 1986 which was amended on February 10, 1986. After one extension, and an amendment to the motion for summary judgment on March 10, 1986, the Plaintiffs filed a Memorandum In Opposition To The Motion For Summary Judgment. Attached to the Plaintiffs' memo was a copy of the August 2, 1982 state court judgment which recites that by order of the Supreme Court of Indiana, (said order being undesignated), the findings of facts and conclusions of law submitted by the Plaintiff were adopted and incorporated by reference into the judgment by the state court. Fifty Nine (59) findings of fact were made by the state court. Findings Numbered Fifty Seven (57) and Fifty Eight (58) states as follows:

57. That the defendant, Robert Tomsic, d/b/a Tomsic Construction Company and/or Tomsic and Sons Builders, Inc. materially misrepresented the value of allowances made and failed to set forth based upon their experience and expertise, the true cost of constructing the single family dwelling for the Gellenbecks.

58. That the defendant, Robert Tomsic, and/or Tomsic and Sons Construction Company, Inc. is liable to the plaintiffs, Gellenbecks, for the their actual damages and in addition thereto are entitled to damages for aggravation and punitive damages as a result of their willful and wanton refusal to transfer and complete the sale of real estate as provided in the contract of July 6, 1976.

The Court also made twenty (20) conclusions of law. Conclusions of law thirteen, (13), fifteen (15), sixteen (16) and eighteen (18) state as follows:

13. The circumstances giving color to a wrongful act may be considered as bearing on the measure of damages and where the elements of aggravation are present, greater damages may be awarded.

15. That the defendant, Robert Tomsic, d/b/a Tomsic Construction Company and/or Tomsic and Son Builders, Inc. aggravated the damages of the plaintiff, by refusing plaintiffs tender and by refusing to grant possession of the home upon payment of all monies claimed, subject only to the deposit of the disputed moneies (sic) in escrow or with the court.

16. That as a result of the plaintiffs attempt to mitigate and the defendants

aggravation, the plaintiffs are entitled to special and punitive damages as prayed for in their complaint.

18. That Robert Tomsic, d/b/a Tomsic Construction Company and/or Tomsic and Sons Construction Company, Inc. maintains the expertise and experience in the construction of single family dwellings having constructed four hundred to six hundred single family dwellings and as a result thereof is charged with having the knowledge and familiarity of the industry and is or should be familiar with respective costs, practices, trades and expenses and as a result thereof, deliberately and/or carelessly and negligently underestimated or mistated (sic) variance allowances as set forth in the contract of July 6, 1976 and as a result thereof is not to charge overages therefore as extras.

The Plaintiffs noted that the Defendant in his Motion for Summary Judgment misstated the records that the Plaintiffs' findings of fact and conclusions of law were not adopted by the state court in that the state court's judgment of August 2, 1982, expressly adopted and incorporated the Plaintiffs' proposed findings of fact and conclusions of law. The Court judicially notes that this clearly appears to be the case based upon the copy of the judgment and proposed findings of fact and conclusions of law attached to both the Plaintiffs' complaint and the Plaintiffs' memorandum in opposition to Motion for Summary Judgment.

The Plaintiffs further noted in said memo that the case was fully tried on the merits by a bench trial on May 16th and 17th and August 29th, 30th and 31st, 1978, that the Defendant's Motion to correct errors filed by the Defendant on September 29, 1982, was denied by the state court on June 21, 1984, and that no appeal was taken by the Defendant therefrom. (Exhibits "C" and "D" to Plaintiffs' memorandum in opposition to motion for summary judgment).

The Plaintiffs assert that the Indiana Supreme Court first allowed punitive damages for fraud arising out of a consumer contract where the conduct of a party in

breaching his contract also independently establishes the elements of common law tort in the case of *F.D. Borkholder Co. Inc. v. Sandock*, 274 Ind. 612, 413 N.E.2d 567 (Ind.App.1980). *See also, Art Hill Ford v. Callander*, 423 N.E.2d 601 (Ind. 1981). The Plaintiffs also pointed out that the Seventh Circuit Court of Appeals in *J. Yanan Associates Inc. v. Integrity Ins. Co.*, 771 F.2d 1025 (7th Cir.1985) in discussing the issue of the allowance of punitive damages for breach of contract stated that Indiana is practically alone among the states in allowing punitive damages for breach of contract.

Simultaneously, the Plaintiffs moved for summary judgment based upon the state court judgment noted above. On March 31, 1986, the Defendant filed his Defendant's Reply Brief In Opposition To Plaintiff's Motion For Summary Judgment.

The Defendant asserts therein that the *F.D. Borkholder Co.*, and *Art Hill* cases cited by the Plaintiff as to punitive damages both apply the standard of proof of a fair preponderance of the evidence and are prior to the *Travelers* case which enunciated the clear and convincing standard before punitive damages can be awarded. The Defendant also cites the case of *Continental Casualty Company v. Howard*, 775 F.2d 876 (7th Cir.1985) for the proposition that in applying the clear and convincing standard, punitive damages should not be awarded where the evidence is based only on allegations of fraud and malice.

This matter appears to arise from a contract between the Plaintiffs and Defendant for the construction of the home. Pursuant to that contract, the Defendant was to construct and sell a single family dwelling and lot to the Plaintiffs for a set sum. At some point, it is alleged that the contract was breached precipitating a state court action. The state court action apparently was very involved. It appears that a judgment was entered in a lower court, subsequently reversed on some grounds by the Supreme Court of the State of Indiana, reheard by a different trial court which subsequently entered the judgment noted above. The Defendant sought to have that

judgment corrected through state court procedures. The court declined to correct its judgment. Subsequently, the Defendant then filed bankruptcy before this Court. The Plaintiffs have now brought this action to determine the dischargeability of the debt based upon the state court judgment.

## II

### Conclusions of Law

No objections were made by the parties to the jurisdiction of this Court and the Court finds this is a core proceeding pursuant to 28 U.S.C. § 157.

### A. Defendant's Motion For Summary Judgment.

We first address the Defendant's Motion for Summary Judgment. We note at the outset that no affidavits were submitted with the motion for summary judgment. It appears that the Defendant is maintaining that he should be accorded summary judgment as a matter of law and that there are no issues of fact pending, but merely questions of law. The Defendant appears to maintain that there are three basis for awarding of summary judgment. The first is that punitive damage awards are not available for contract actions. Secondly, that "mere aggravation, from which punitive damages were awarded to Plaintiffs in a prior judgment, does not fall within the exceptions to a discharge in bankruptcy." Third, that the Debtor can void any judgment entered by a previous court and therefore, the debt is dischargeable.

At the outset we will note some general principles regarding summary judgment which are applicable not only to Defendant's Motion for Summary Judgment but also to Plaintiff's Motion.

The party moving for summary judgment has the burden of establishing there is no genuine issue of material fact. *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.1983).

■ It is not the function of the trial court upon a motion for summary judgment to try an issue of fact, if a factual question is presented, but the primary de-termination is whether there is an issue of fact to be tried, and any doubt as to the existence of a material fact must be resolved against the party moving for summary judgment. *Hawkins v. Frick Reid Supply Corp.*, 154 F.2d 88 (5th Cir.1946). Such a motion is to be liberally construed in favor of the party opposing the motion. *Purity Cheese Co. v. Frank Ryser Co.*, 153 F.2d 88 (7th Cir.1946).

On a motion for a summary judgment under Fed.R.Civ.P. 56(c), inferences to be drawn from the underlying facts contained in such materials as affidavits, attached exhibits, and depositions must be viewed in a light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). However, such inferences must be reasonable or legitimate. 9 Wright, Miller and Kane, *Federal Practice and Procedure*, § 2528 at nn. 15, 18. They may not be based on speculation or conjecture. *Id.* at § 2528, n. 19.

■ Only where one inference can be reasonably drawn from undisputed evidentiary facts is summary judgment proper. *Empire Electronics Co. v. United States*, 311 F.2d 175 (2nd Cir.1962). The burden is on the moving party for summary judgment to establish the lack of triable issue of fact, and all doubts are resolved against him. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438 (2nd Cir.1980).

■ Although Fed.R.Civ.P. 56(e) does not allow a party to rest upon mere allegations or denials of his pleadings when his adversary moves for summary judgment, Rule 56 does not relieve the movant of his initial burden to establish absence of genuine issue of material facts and showing judgment is warranted as a matter of law. *Boazman v. Economics Laboratory, Inc.*, 537 F.2d 210 (5th Cir.1976).

Any reasonable doubt regarding the existence of disputed facts should be resolved against the movant. *Fitzsimmons v. Best*, 528 F.2d 692, 694 (7th Cir.1976).

■ If, however, the movant carries his initial burden to show, on the basis of ad-

missible evidence adduced from persons with personal knowledge of the facts that there is no genuine issue as to any material fact, then the opposing party may not defeat the motion by relying on contentions of its pleadings but must produce significant probative evidence to support its position. *United States v. Pen–R–Books, Inc.,* 538 F.2d 519 (2nd Cir.1976).

■ Summary judgment is proper where the issues of a case involve no more than the application of legal principles to undisputed facts. *Majors Furniture Mart, Inc. v. Castle Credit Corp.,* 602 F.2d 538 (3rd Cir.1979); *Fitzsimmons v. Greater St. Louis Sports Enterprises, Inc.,* 63 F.R.D. 620 (D.C.Ill.1974).

The first basis for summary judgment, is that under Indiana law punitive damages are not awardable in contract actions. However the essence of Defendant's argument is that the evidence adduced in the state court failed to meet the clear and convincing standard necessary for the awarding of punitive damages. In Defendant's memorandum, he states: "The Plaintiffs failed to establish fraud by clear and convincing evidence and therefore were not entitled to punitive damages." Defendant's Memorandum In Support of Motion for Summary Judgment, p. 2.

■ We also note that Defendant apparently concedes that punitive damages may be awarded in a contract action where a tort or other specific factors are shown by clear and convincing evidence. This is in fact a true statement of Indiana law as set out by the Indiana Supreme Court in *Traveler's Indemnity Co. vs. Armstrong,* 442 N.E.2d 349, 362 (1982). The Plaintiffs may have been entitled to punitive damages in the state court action if the evidence introduced proved one of the exceptions to the general rule by clear and convincing evidence.

■ Therefore, the Defendant's Motion for Summary Judgment necessarily asks us to review the evidence relied upon by the state court. We are not an appeals court. We assume that Defendant is well aware of his appeal rights in the state court. The

evidence may or may not exist to uphold an award of punitive damages based upon a standard of proof of clear and convincing evidence as is required by this Court. However, the Defendant has failed to put forward any evidence whatsoever to support his Motion for Summary Judgment. Therefore, at this time we will deny the motion for summary judgment as it relies upon this ground.

■ The Defendant's second ground must also be denied. Defendant argues that his actions amount to nothing more than "mere aggravation". Defendant further argues that as a matter of law mere aggravation does not rise to the level of an exception to discharge under 11 U.S.C. § 523 or 11 U.S.C. § 727. However, it is not necessary for us to reach the issue of whether mere aggravation is sufficient to create exception to discharge. Rather, we must stop short of that determination. Again, Defendant has requested that we review evidence not in front of this court at this time. In his Motion for Summary Judgment, the Defendant has not submitted any transcript of any evidence, any affidavits, or other evidence other than his bald assertions within his Memorandum that would support his allegations that his conduct was "mere aggravation". The question of whether the actions were "mere aggravation" appears to be a question of fact as opposed to a question of law. Therefore, it is the Defendant's burden to come forward with evidence that there is no material issue of fact regarding his conduct and that as a matter of law his conduct as determined by the state court did not fall within the purview of 11 U.S.C. § 523(a)(2) or (6). No such evidence has been forthcoming. We therefore deny the Defendant's Motion for Summary Judgment on his second ground.

■ We turn now to the third ground. Defendant apparently argues that the judgment lien may be avoided in bankruptcy and therefore cannot form the basis of a nondischargeable debt. The argument is at best vague and unclear to this Court. However, we will address it briefly.

Defendant is mistaken in his assertion that the fact that a "judgment lien" may be voided also renders the underlying judgment null and void. The judgment debt continues to exist until discharged in bankruptcy. The avoidance of a judgment lien under 11 U.S.C. § 522(f) merely voids the lien created by the judgment. It has no effect on the underlying judgment debt.

We therefore deny the motion for summary judgment based upon the third ground alleged by the Defendant.

We therefore find no basis to award summary judgment to the Defendant. The Defendant has not favored this Court with any evidence supporting his arguments under summary judgment. Further, we do not agree with the Defendant that he is entitled to summary judgment as a matter of law and that there are no material issues of fact outstanding. It would appear to this Court that there are evidentiary issues outstanding. Whether or not the issues are truly issues of fact or maybe resolved by affidavit is a question that we cannot answer at this time due to Defendant's failure to submit the proper documents with his Motion for Summary Judgment. We therefore deny Defendant's Motion for Summary Judgment.

### B. Plaintiff's Motion for Summary Judgment

We turn now to Plaintiff's Motion for Summary Judgment. We note that its basis is that the Defendant should be denied discharge pursuant 11 U.S.C. § 523(a)(2), 11 U.S.C. § 523(a)(6), 11 U.S.C. § 523(c) and 11 U.S.C. § 727. The motion for summary judgment is based upon a state court judgment noted above and entered by a state court after a full trial on the merits.

11 U.S.C. § 523(c) grants to the bankruptcy court exclusive jurisdiction to determine whether or not a debt is non-dischargeable under sections 523(a)(2), (4) and (6) of the Bankruptcy Code.

The bankruptcy courts have struggled with the applicability of the doctrines of *res judicata* or claim preclusion and collateral estoppel or issue preclusion as to a state court judgment vis-a-vis the clear congressional intent that exclusive jurisdiction vests in the bankruptcy court to determine the dischargeability of a debt, when one party to the state court judgment asserts in an adversary proceeding filed in the bankruptcy court under 11 U.S.C. § 523(c), that the prior state judgment between precludes further litigation or obviates further litigation in the bankruptcy court on the issue of its non-dischargeability.

The phrases *"res judicata"* and "collateral estoppel" have been assigned a variety of meanings by the courts in many different contexts and their use has often resulted in only increasing the confusion as to when these doctrines are properly applicable. Accordingly, this Court will not use these terms but will use the term "claim preclusion" in lieu of *"res judicata"* and the term "issue preclusion" in lieu of the term "collateral estoppel".[2]

[2] As set forth in the Supreme Court's decision in *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 77, n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984): "The preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years. These effects are referred to collectively by most commentators as the doctrine of 'res judicata'. Res judicata is often analyzed further to consist of two preclusion concepts: 'issue preclusion' and 'claim preclusion'. Issue preclusion refers to the effects of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar. This Court on more than one occasion has used the term 'res judicata' in a narrow sense, so as to exclude issue preclusion or collateral estoppel. When using that formulation, 'res judicata', becomes virtually synonomous with 'claim preclusion.' In order to avoid confusion resulting from the two uses of 'res judicata', this opinion uses the term 'claim preclusion' to refer to the preclusive effect of a judgment in foreclosing relitigation of matters that should have been raised in an earlier suit." (Citations omitted). In the subsequent case of *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 1329 n. 1, 84 L.Ed.2d 274 (1985), the Supreme court continued the same use of this terminology: "In this opinion, we used the term 'claim preclusion' to refer to 'res judicata' in a

narrow sense, *i.e.,* the preclusive effect of a judgment in foreclosing litigation of matters that should have been raised in an earlier suit. In contrast, we used the term 'issue preclusion' to refer to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided."

The reader should thus also be aware that many of the decisions referred to herein do not make reference to the preclusion terminology, but use the terms res judicata and collateral estoppel and thus these variances in terminology must be kept in mind in analyzing these cases.

The general principles of claim preclusion and issue preclusion and their purposes should be first noted. These doctrines serve a multitude of purposes. They encourage reliance upon judicial decisions by preventing inconsistent decisions; they conserve the resources of the Courts and the litigants; they promote comity between the state and federal courts; and, they ensure judicial finality. *See,* Ferrell, *The Preclusive Effect of State Court Decisions in Bankruptcy,* First Installment, 58 Amer.Bankr.L.R. 349, 351 (1984).

One frequently quoted definition of the basic Rule of Claim Preclusion is from the United States Supreme Court's opinion in *Commissioner v. Sunnen:*

> The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac,* 94 U.S. 351, 352 [24 L.Ed. 195] ... [1876]. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.

*Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948).

As opposed to claim preclusion, issue preclusion prevents litigation by parties to a previous action of issues that have been "actually and necessarily determined by a court of competent jurisdiction...." *Montana v. United States,* 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1977). As the Supreme Court noted in *Southern Pacific Railroad Company v. United States:*

> The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.

*Southern Pacific Railroad Co. v. United States,* 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897).

The *Restatement (Second) of Judgments* defines issue preclusion in the following terms:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

*Restatement (Second) of Judgments,* § 27 (1982).

Thus, issue preclusion is more limited than claim preclusion as issue preclusion only applies to individual legal and factual issues and not to an entire cause of action.

In the context of prior state court judgments and their non-dischargeability in bankruptcy, the Supreme Court in *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), has spoken as to claim preclusion or *res judicata* and denied claim preclusion effect to state court judgments in bankruptcy dischargeability litigation. The issue in *Brown v. Felsen, supra,* was whether the bankruptcy court could consider evidence extrinsic to the judgment and record of a prior state court action to re-

cover monies when determining whether an indebtedness previously reduced to judgment was dischargeable under 11 U.S.C. § 35 of the Act (now 11 U.S.C. § 523(a)(2)(A)). The State Court suit was settled by stipulation and neither the stipulation nor the judgment set out the cause of action upon which the bankrupt's liability was based. The creditor sought to establish that the debtor's judgment debt to him was nondischargeable since the debt was allegedly the product of fraud and malicious conversion. The Debtor-bankrupt argued that the prior state court proceeding did not result in a finding of fraud, and contested that *res judicata* barred relitigation of the nature of his debt. The Court held that the doctrine of *res judicata* does not prevent a bankruptcy court from going behind a state court judgment to determine whether a debt is non-dischargeable. The Court held that Congress intended the bankruptcy court resolve these types of dischargeability issues and that by limiting the application of claims preclusion, the bankruptcy court would weigh the evidence and make the final determination as to whether the Debtor committed fraud or conversion. *Id.,* 442 U.S. at 138, 99 S.Ct. at 2212, 60 L.Ed.2d at 775.

The *Brown* Court stated that if *res judicata* were to apply, it would force the consolidation of claims in the state court which would "undercut a statutory policy of resolving § 17 questions in bankruptcy court, and would force state courts to decide these questions at a stage when they are not directly in issue and neither party has a full incentive to litigate them." *Id.,* 442 U.S. at 134, 99 S.Ct. at 2211, 60 L.Ed.2d at 773. The Court also stated that, "neither the interests served by *res judicata*, the process of orderly adjudication in state court, nor the policies of the Bankruptcy Act would be well served by foreclosing the petitioner from submitting evidence to prove his case." *Id.,* 442 U.S. at 132, 99 S.Ct. at 2210, 60 L.Ed.2d at 772. The *Brown* Court also made the following commentary on the 1970 Amendments to Section 17:

> If a state court should expressly rule on § 17 questions, then giving finality to

those rulings would undercut Congress' intention to commit § 17 issues to the jurisdiction of the bankruptcy court. The 1970 amendments eliminated post-bankruptcy state court collection suits as a means of resolving certain § 17 dischargeability questions. In those suits, creditors had taken advantage of debtors who were unable to retain counsel because bankruptcy had stripped them of their assets. Congress' primary purpose was to stop that abuse. A secondary purpose, however, was to take these § 17 claims away from state courts that seldom dealt with the federal bankruptcy laws and to give those claims to the bankruptcy court so that it could develop expertise in handling them. By the express terms of the Constitution, bankruptcy law is federal law, U.S. Const., Art. I, § 8, cl. 4, and the Senate Report accompanying the amendment described the bankruptcy court's jurisdiction over these § 17 claims as "exclusive." S.Rep. No. 91–1173, p. 2 (1970). While Congress did not expressly confront the problem created by prebankruptcy state-court adjudications, it would be inconsistent with the philosophy of the 1970 amendments to adopt a policy of *res judicata* which takes these § 17 questions away from bankruptcy courts and forces them back into state courts. *See In re McMillan,* 579 F.2d 289, 293 (CA3 1978); *In re Houtman,* 568 F.2d 651, 654 (CA9 1978); *In re Pigge,* 539 F.2d [369] at 371; 1 D. Cowans, Bankruptcy Law and Practice § 253, p. 298 (1978). Compare 1A J. Moore, J. Mulder, & R. Oglebay, Collier on Bankruptcy ¶ 17.16[6], p. 1650.1 n. 50 (14th ed. 1978) (1970 Act), with *id.,* ¶ 17.16[4], p. 1643 (prior state law).

*Id.,* 442 U.S. at 135–37, 99 S.Ct. at 2111–12, 60 L.Ed.2d at 774–75.

The Courts have consistently applied the holding in the *Brown* case in dischargeability proceedings under 11 U.S.C. § 523(c). *See, e.g., Carey Lumber Co. v. Bell,* 615 F.2d 370 (5th Cir.1980); *In re Goodman,* 25 B.R. 932 (Bankr.N.D.Ill.1982); *In re Spector,* 22 B.R. 226 (Bankr.N.D.N.Y.

1982); *In re Dohm,* 19 B.R. 134 (Bankr.N.D.Ill.1982).

It should be noted that the *Brown* case, did not involve the issue of whether issue preclusion or collateral estoppel effect should be given to a prior state court judgment by the bankruptcy court in the non-dischargeability context but the Court indicated that collateral estoppel could be applicable leaving the question open. As the Court stated:

> This case concerns *res judicata* only, and not the narrower principle of collateral estoppel. Whereas *res judicata* forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions *actually and necessarily decided in a prior suit.* Montana v. United States, 440 U.S. 147, 153, 59 L.Ed.2d 210, 99 S.Ct. 970 [973] (1979); *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 58 L.Ed.2d 552, 99 S.Ct. 645 [649 n. 5] (1979); *Cromwell v. County of Sac,* [4 Otto 351], 94 U.S. 351, 352–353, 24 L.Ed. 195 (1877). *Id, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.* (Emphasis added).

*Brown v. Felsen,* 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10, 60 L.Ed.2d at 776 n. 10.

To resolve this issue a close analysis of the United States Constitution, the Bankruptcy Code and the Full Faith and Credit Statute, 28 U.S.C. § 1738, is required.

Article I, § 8, Cl. 4 of the United States Constitution mandates that Congress establish "uniform laws on the subject of Bankruptcy throughout the United States." Congress chose to implement that clause by enacting 11 U.S.C. § 523(c) which grants to the bankruptcy court *exclusive* jurisdiction over exceptions to discharge based on 11 U.S.C. § 523(a)(2) (false representations, false pretenses and actual fraud); § 523(a)(4) (fraud or defalcation in a fiduciary capacity, embezzlement or larceny);

and, § 523(a)(6) (willful or malicious injury to another entity).

This exclusive jurisdiction was originally vested in the bankruptcy courts by the 1970 amendments to the Bankruptcy Act of 1898 then in effect. The 1898 Act and its amendments were superseded by the Bankruptcy Act of 1978, which basically did not change the previous law. The purposes in granting exclusive jurisdiction were to ensure consistency of application of federal law that would be obtained by having judges with expertise in bankruptcy law pass on dischargeability questions and to further the bankruptcy "fresh start" policy by protecting debtors against harassing law suits initiated by creditors after bankruptcy and to perhaps protect unwitting waivers of the debtor's discharge. For a discussion of the historical background and purpose of § 523(c) and its predecessor, *see,* Ferrell, *The Preclusive Effect of State Court Decisions in Bankruptcy,* Second Installment, 59 Amer.Bankr.L.J. 55, 56–59 (1985).

In addition the Full Faith and Credit Clause of the United States Constitution, Art. IV, § 1, was implemented by 28 U.S.C. § 1738, the relevant portions of which provide as follows:

> The ... judicial proceedings of any court of any state ... shall have the same full faith and credit in every court within the United States and its territories and possessions as they have by law or usage in the courts of such state.

The Supreme Court in examining the "full faith and credit clause" and 28 U.S.C. § 1738 has stated, "a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered". *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56, 63 (1984). *See also, Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *McDonald v. West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); *Kremer v. Chemi-*

*cal Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

*In Marrese* the Court noted:

The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings, "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered.

*Marrese v. Academy of Orthopaedic Surgeons*, 470 U.S. at 380, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274.

However, the determination of state issue preclusion rules is a very difficult and complicated matter and as the Chief Justice in his concurring opinion in *Marrese*, stated:

[N]o guidance is given as to how the District Court should proceed if it finds state law silent or indeterminate on the claim preclusion question. The Court's refusal to acknowledge this potential problem appears to stem from a belief that the jurisdictional competency requirement of *res judicata* doctrine will dispose of most cases like this.

*Id.* 105 S.Ct. at 1336.

The Supreme Court in *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308, 314 (1980), indicated that only a clear congressional intent contrary to 28 U.S.C. § 1738 will permit a federal court to deny the preclusive effect of a state court judgment. In *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 467, 102 S.Ct. at 1890, 72 L.Ed.2d at 271, *supra*, the Supreme Court stated, "an exception to § 1738 will not be recognized unless a later statute contains an express or implied partial repeal ... Repeals by implication are not favored." The Court gave as an example of clear intent the federal habeas corpus statute, 28 U.S.C. § 2254. The Court in *Kremer* also stated, "§ 1738 does not allow federal courts to employ their own

rules of *res judicata* in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept rules chosen by the state from which the judgment is taken", *Id.*, 456 U.S. at 481, 102 S.Ct. at 1898, 72 L.Ed.2d at 280.

It appears however, that the general rules as set out above have been ignored by the federal courts in bankruptcy cases relating to the issue of nondischargeability and the effect of prior state litigation. "Instead the bankruptcy courts have applied federally developed rules of issue preclusion often without acknowledgment of the customary practice." Ferrell, *The Preclusive Effect of State Court Decisions in Bankruptcy*, First installment, 58 Amer. Bankr.L.J. 349, 357 (1985).

The general test most frequently applied by the bankruptcy courts is found in *In re Ross*, 602 F.2d 604, 5 BCD 700 (3rd Cir. 1979). *Ross* sets out a four point test before the doctrine of issue preclusion or collateral estoppel can bar the relitigation of a dischargeability issue. This test is as follows:

1. The issue sought to be precluded must be the same as that in the prior action;

2. The issue must have been actually litigated;

3. The issue must have been determined by a valid and final judgment; and

4. The determination must have been essential to the judgment.

*Id.* 602 F.2d at 608.

The Court in *Ross* held that the Bankruptcy Court must carefully review the record in the prior case and hold a hearing at which the parties have an opportunity to present evidence to determine whether these standards have been met.

This test is similar to the one set out in *Restatement (Second) of Judgments* § 27 (1982).

There are minor differences in this federal test among the various circuits, but the *Ross* criteria appears to be the most frequently utilized. *See, e.g., Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981); *In re*

*Carothers*, 22 B.R. 114, 119 (Bankr.D.Minn. 1982); *United States Life Title. Ins. Co. v. Dohm*, 19 B.R. 134, 137 (N.D.Ill.1982); *In re Supple*, 14 B.R. 898, 899 (Bankr.D.Conn. 1981). The most difficult part of the test is the "identity of issue" requirement, as the Court in *In re Supple* stated:

> [a] bankruptcy court cannot give collateral estoppel effect to a prior state court adjudication if the issue before the bankruptcy court differs from the issue which was before the state court. The standards employed by the state court in reaching its decision must comport with federal standards. To insure such an identity of standards, a bankruptcy court must scrutinize the entire record of the state court proceedings.

*Id.* at 904.

It should also be noted that the party seeking to assert collateral estoppel has the burden of proving all the requisites for its application. *Spilman v. Harley*, 656 F.2d 224, 229, *supra, In re Spector*, 22 B.R. 226, 231 (N.D.N.Y.1982). Any reasonable doubt as to what should be decided should be resolved against using it as estoppel. *Id.*

The Seventh Circuit has not addressed the application of the doctrine of issue preclusion to bankruptcy cases as it relates to the issue preclusion effect of a state court judgment in a subsequent nondischargeability proceeding as of the date of this opinion.

There are numerous difficulties in giving the finding of fact of a state court judgment issue preclusive effect in a bankruptcy court dischargeability proceeding.

First, the standard of proof may be different. The bankruptcy courts generally, including this Court, require that the plaintiffs prove his case by clear and convincing evidence when asserting a debt is not dischargeable pursuant to 11 U.S.C. § 523(a)(2), (4) and (6). *See, In re Kimzey*, 761 F.2d 421, 423 (7th Cir.1985) where the Seventh Circuit Court of Appeals held that a party objecting to dischargeability based on fraud must establish each element of the claim by clear and convincing evidence.

This higher and more exacting standard of proof is also applicable in proceeding under 11 U.S.C. § 523(a)(4) for fraud or defalcation in a fiduciary capacity, embezzlement or larceny or 11 U.S.C. § 523(a)(6) for willful and malicious injury to person or property. *See, e.g., In re DeRosa*, 20 B.R. 307, 311, NN.3 & 4 (Bankr.S.D.N.Y.1982). This is a higher standard of proof than a fair preponderance of evidence normally applied by the state court, and it is not always clear what standard the state court has in fact applied.

The case law in Indiana generally, as to the standard of proof in civil actions for intentional torts, such as fraud or conversion, is that the claimant has the burden of proof and the right to prevail must be shown by a fair preponderance of the evidence rather than the higher standard of clear and convincing evidence required in a bankruptcy setting. *See, e.g., Grissom v. Moran*, 154 Ind.App. 419, 290 N.E.2d 119, *Reh'rg Denied* 154 Ind.App. 432, 292 N.E.2d 627 (Ind.App.1972) (fraud action); *Bissell v. Wert*, 35 Ind. 54 (Ind.1871) (conversion).

However, the Indiana Courts have recently added an exception to the above general rule. In the *Travelers Indemnity Company v. Armstrong*, 442 N.E.2d 349, 362, 363 (Ind.1982), the Indiana Supreme Court held that proof by clear and convincing evidence is required when punitive damages are sought. This case involved an action by an insured versus an insurer on an insurance policy. The Court noted that:

> [p]unitive damages should not be allowable upon evidence that is merely consistent with the hypothesis of malice, fraud, gross negligence or oppressiveness. Rather some evidence should be required that is inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such noniniquitous human failing....

The propriety of the clear and convincing evidence standard is particularly evident in contract cases, because the

breach itself for whatever reason, will almost invariably be regarded by the complaining party as oppressive, if not outright fraudulent.

*Id.*

This standard of proof in awarding punitive damages was extended by the Indiana Court of Appeals, Fourth District, in the case of *Orkin Exterminating Co. v. Traina,* 461 N.E.2d 693, 697–698 (Ind.App. 4th Dist.1984), where the Court held that the clear and convincing standard of proof also applied to "all punitive damage cases whether they are tortious breach of contract or pure tort cases." *Id.* at 698. The Court stated:

> To be substantial and of probative value as to a punitive damages award, the evidence must be clear and convincing, that is, there must be some evidence (a) of malice, fraud, gross negligence or oppressive conduct mingled in the breach in tortious breach of contract cases or of malicious, reckless or willful and wanton misconduct in pure tort cases, and (b) the tortious conduct is inconsistent with a hypothesis of mere negligence, mistake of law or fact, over-zealousness, or other noniniquitous human failing.

*Id.* at 698.

The Indiana Supreme Court on petition to transfer in the *Orkin* case reversed on other grounds but agreed with the holding of the Court of Appeals as to the standard of proof in assessing punitive damages in tort cases and stated as follows:

> The Court of Appeals was correct in determining that the *Armstrong* clear and convincing evidence rule applies in pure tort cases as well as in those rare breach of contract cases where it is clear that the breach contained "elements that enable the court to regard them as falling within the field of tort or as closely analogous thereto, ...

*Orkin Exterminator Co., Inc. v. Traina,* 486 N.E.2d 1019, 1021 (Ind.1986).

Accordingly, if an Indiana State Court in entering a money judgment awards punitive damages, that court is theoretically compelled by Indiana Law pursuant to the *Armstrong* and *Orkin* cases, *supra,* to find that the prevailing party has submitted clear and convincing evidence to justify such an award.

██ Thus, the standard as to the burden of proof to be applied by the state court would be the same as is required by the bankruptcy court in making a finding of a subsidiary ultimate fact in a nondischargeability proceeding. As a consequence, if such a fact issue were *actually litigated* and *necessarily decided* in the state court and the court applied the higher standard of proof of clear and convincing evidence rather than that of by a fair preponderance of the evidence and awarded punitive damages those findings of fact *could* have issue preclusive (collateral estoppel) effect in the bankruptcy proceeding. However, as can be seen from the discussion below regarding the various differences between Indiana and Federal Bankruptcy Law as to fraud, conversion, etc., the mere fact that the state court applied the standard of clear and convincing evidence and awarded punitive damages does not mean that the findings of fact necessarily include findings of fact that the conversion was "willful and malicious" as required by § 523(a)(6) or that the fraud was actual or positive as required by § 523(a)(2)(A).

It is noted that the Indiana Appellate Court cases of *F.D. Borkholder Co., Inc.* and *Art Hill Ford, supra,* cited by the Plaintiff for the proposition that punitive damages are allowable in certain contract actions do not set forth the standard of proof to be applied by the trial court if punitive damages are assessed, although, the *F.D. Borkholder* Court does state, "We believe that there is cogent and convincing proof that the Borkholder firm engaged in intentional wrongful acts...." *F.D. Borkholder Co., Inc. v. Sandock,* 413 N.E.2d 567, 571, *supra.* It was not until the *Orkin* and *Travelers* cases that the Indiana Appellate Courts required the higher standard of proof of clear and convincing evidence as opposed to one of a fair preponderance of the evidence before punitive damages could be awarded. The *Orkin* and *Travelers* cases were decided *after* the

state court judgment in question was entered. Further, the findings of fact and the conclusions of law of the state court do not state what standard of proof the Court applied. The Court's conclusion of law number sixteen (16) merely states that, "as a result of the Plaintiffs' attempt to mitigate and the Defendant's aggravation, the Plaintiffs' are entitled to specific and punitive damages as prayed for in their complaint."

■ The elements of the state cause of action such as fraud or conversion may be different than those necessary to have a claim be determined as nondischargeable pursuant to 11 U.S.C. § 523(c). As pointed out by the Court in *In re Rainey*, 1 B.R. 569, 570 (Bankr.D.Ore.1979):

This Court is permitted—and indeed may be required—to look behind a lower court judgment in determining dischargeability. *In re Houtman*, 568 F.2d 651 (9th Cir.1978); *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767, 5 B.C.D. 226 (1979); *In re Stokke*, No. B71–3601 (B.Ct.Oregon 1972). Underlying considerations for discharge in bankruptcy are different from those for common law negligence and intentional torts; inquiries and findings necessary for the two types of actions frequently may differ. *See Brown v. Felsen, supra* 99 S.Ct. at 2213, 5 B.C.D. at 229–30.

*Id.*

■ It has been repeatedly held that whether a debt is dischargeable in bankruptcy is a question of federal law and state law is not applicable. *See, Matter of Pappas*, 661 F.2d 82 (7th Cir.1981). Although this was an Act case interpreting the predecessor to 11 U.S.C. § 523(a)(2) (11 U.S.C. § 35(a)(2)), there have been only slight changes between the Act and the Code and the foregoing statement continues to correctly state which law is applicable under the 1978 Code. *See, Birmingham Trust National Bank v. Case*, 755 F.2d 1474 (11th Cir.1985), where it was held that because of the negligible differences, case law under the Act serves as a useful guide under the 1978 Code. Other courts construing the 1978 Code have consistently held that the question of whether a debt is dischargeable in bankruptcy is one of federal law. *See, e.g., In re Marini*, 28 B.R. 262, 264 (Bankr.E.D.N.Y.1983); *In re Tapp*, 16 B.R. 315 (Bankr.D.Alaska 1981); *In re Sadwin*, 15 B.R. 884, 886 (D.Ct.M.D. Fla.1981); *In re Liberati*, 11 B.R. 54 (Bankr.E.D.Pa.1981). While the case at bar involves an allegation that the debt is nondischargeable based on willful and malicious injury pursuant to 11 U.S.C. § 523(a)(6), rather than fraud pursuant to 11 U.S.C. § 523(a)(2) the above statement that nondischargeability is based on federal law is equally applicable.

The statutory elements that need to be proven under § 523(a)(2), (4) and (6) and the federal case law construing the same will often not be the same as is necessary to assess liability in the state court based on the same set of facts. For instance, while a debtor may be liable in damages for a mere technical conversion in the state court, § 523(a)(6) expressly requires that such a conversion be both "willful and malicious" in order for a debt to be held nondischargeable. *Compare, Noble v. Moistner*, 180 Ind.App. 414, 388 N.E.2d 620, 621 (4th Dist.1979), where conversion is defined as the "appropriation of property of another to the party's own use and benefit, or in its destruction, or in exercising dominion over it, in exclusion and definance of the rights of the owner or lawful possessor, or in withholding it from his possession, under a claim and title inconsistent with the owner's."

The application of this definition is clearly not sufficient in a nondischargeability proceeding under § 523(a)(6) in which the claimant must show conjunctively that the actions of the debtor were "willful *and* malicious" and where a mere technical conversion may be dischargeable, where it is not shown the same was willful and malicious. *See, e.g., Matter of Conner*, 59 B.R. 594, 596 (Bankr.W.D.Mo.1986). *See also*, 3 *Collier on Bankruptcy* ¶ 523.16 (pp 511–514) (L. King 15th Ed.), where it discusses the fact that the 1978 Code overruled many previous Act cases holding various degrees of recklessness as being willful and mali-

cious and that a deliberate and intentional act is necessary.

The same can be said of a state fraud action. In Indiana, the claimant can prove that the fraud is either actual or constructive. Under Indiana law "constructive fraud" is fraud that arises by operation of law from conduct, which if sanctioned by law, would secure an unconscionable advantage. *Whiteco Properties, Inc. v. Thielbar*, 467 N.E.2d 433 (Ind.App. 3rd Dist.1984); *See also, Abdulrahim v. Gene B. Glick Co., Inc.*, 612 F.Supp. 256 (N.D. Ind.1985); *Crook v. Shearson Loeb Rhoades, Inc.*, 591 F.Supp. 40 (N.D.Ind. 1983).

This is to be compared with the clear legislative intent of the provisions of § 523(a)(2)(A). The relevant legislative statements are as follows:

> [t]hus, under section 523(a)(2)(A) a creditor must prove that the debt was obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insiders financial condition. Subparagraph (A) is intended to codify current case law e.g., *Neal v. Clark*, 95 U.S. 704 [, 24 L.Ed. 586] (1887), which interprets "fraud" to mean actual or positive fraud rather than fraud implied in law. Subparagraph (A) is mutually exclusive from subparagraph (B). Subparagraph (B) pertains to the so-called false financial statement....

124 Cong.Rec. H11095–96 (Daily Ed. Sept. 28, 1978); S17412 (Daily Ed. Oct. 6, 1978). Reprinted in 4 *Norton Bankruptcy Law and Practice*, Annotated Legislative History, § 523, page 397 (Callaghan and Company, 1983).

The Courts have consistently held in construing § 523(a)(2)(A) that there must be proof of positive fraud and this involves showing that the acts which constitute fraud involved moral turpitude or an intentional wrong; and fraud implied in law which does not require a showing of bad faith or immorality is insufficient. *See, e.g., In re Gilman*, 31 B.R. 927, 929 (Bankr.S.D.Fla.1983); *In re Slutzky*, 22 B.R. 270, 271 (Bankr.E.D.Mich.1982); *In re*

*Montbleau*, 13 B.R. 47, 48 (Bankr.D.Mass. 1981); *In re Byrd*, 9 B.R. 357, 359 (Bankr. D.C.1981); *In re McAdams*, 11 B.R. 153, 155 (Bankr.D.Vt.1980).

██ Thus, from the mere fact that a state fraud or conversion case is fully tried on its merits and judgment entered, it does not follow that the Court's finding of fact in such a case (assuming that Court used the clear and convincing evidence standard discussed above) would collaterally estop or operate as issue preclusion in a subsequent nondischargeability proceeding in the Bankruptcy Court as for example, the evidence might show, that although the court found fraud the finding of fraud may have really been a finding of constructive fraud or fraud implied-in-law as opposed to actual or positive fraud or that the finding of conversion was really based on a technical conversion or gross negligence which would be dischargeable in the bankruptcy proceeding.

This Court has examined the various positions taken by the courts regarding issue preclusion in the context of bankruptcy nondischargeability proceedings. Lower Courts before and after *Brown* have approached the issue in various ways. A leading pre-*Brown* case was in *In re Houtman*, 568 F.2d 651, 3 B.C.D. 1403 (9th Cir.1978). There the Court held that collateral estoppel may not be applied in determining the dischargeability of debts, and the bankruptcy court must consider all relevant evidence, including state court proceedings. The Court stated:

> The 1970 Amendments to the Bankruptcy Act imposed upon the bankruptcy courts the exclusive jurisdiction to determine dischargeability. As we read those Amendments there is no room for the application of the technical doctrine of collateral estoppel in determining the nondischargeability of debts described in section 17(a)(2), (4), and (8) of the Bankruptcy Act.

*In re Houtman*, 568 F.2d 651, 3 B.C.D. at 1404.

The *Houtman* Court added 568 F.2d at 653 n. 2, 3 B.C.D. at 1404, n. 2 as follows:

We acknowledge that a grant of exclusive jurisdiction to federal courts does not automatically preclude the application of the doctrine of collateral estoppel. *Becher v. Contoure Laboratories*, 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752 (1928); *cf. Clark v. Watchie*, 513 F.2d 994 (9th Cir.), *cert. denied*, 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975). However, we believe that collateral estoppel is inappropriate when "a new determination is warranted ... by factors relating to the allocation of jurisdiction between [the two courts]." Restatement 2d of Judgments § 68.1(c) [Tent.Draft No. 4, 1977]; *cf. Lyons v. Westinghouse Electric Corp.*, 222 F.2d 184 (2d Cir.), *cert. denied*, 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737 (1955) (refusal to give collateral estoppel effect to state court finding of no antitrust violation because of need for "an untrammeled jurisdiction of the federal courts." *Id.* at 189).

Congress, in enacting the 1970 Amendments to the Bankruptcy Act, felt that

> One of the strongest arguments in support of the bill is that; ... a single court, to wit, the bankruptcy court, will be able to pass upon the question of dischargeability of a particular claim and it will be able to develop an expertise in resolving the problems in particular cases.... Since this is a Federal statute, the Federal courts necessarily have the final word as to the meaning of any term contained therein. S.Rep. No. 91–1173, 91st Cong., 2d Sess. (1970) at 9.

To give collateral estoppel effect to prior state court factual findings would impair the exercise of the expertise of the bankruptcy court. The determination of nondischargeability should remain an exclusive function of the bankruptcy court unimpeded by the refinements of collateral estoppel by state court judgments.

The *Houtman* decision was followed in *In re Rahm*, 641 F.2d 755, 757 (9th Cir. 1981) *cert. denied sub nom. Gregg v. Rahm*, 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 without directly citing *Houtman* where the Court held a prior state judgment has no collateral estoppel force on a bankruptcy court considering dischargeability unless both parties agree to rest their case on that judgment. The Court went on to state that at most, a prior judgment establishes a *prima facie* case of nondischargeability which the bankrupt is entitled to refute on the basis of all relevant evidence, citing *Matter of Kasler*, 611 F.2d 308, 309 (9th Cir.1979) which held that in an ordinary case a prior state judgment would not be *res judicata* or have collateral estoppel effect in a bankruptcy court, because bankruptcy courts have exclusive jurisdiction to determine dischargeability. *See also, In re Daley*, 776 F.2d 834, 838 (9th Cir.1985) *cert. denied sub. nom. Daley v. Frank*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). There the Court held that the doctrine of issue preclusion did not bar creditors from relitigating the issue of nondischargeability based on fraud where a dismissal with prejudice was entered by stipulation in that the fraud claims were never actually litigated and the creditors obtained judgment on their contract claims only.

The United States Bankruptcy Appellate Panel of the Ninth Circuit in the case of *In re DiNoto*, 46 B.R. 489, 491 (B.A.P. 9th Cir.1984) in citing *Kasler* and *Houtman, supra*, held that where the bankruptcy court has exclusive jurisdiction in actions to determine dischargeability, state judgments are not *res judicata* and do not have collateral estoppel effect because of the Bankruptcy Court's exclusive jurisdiction. The Court went on to state that the foregoing rule applies to stipulated judgments as well as those that result from a trial.

This Court also believes that the *DiNoto* Court also correctly distinguished the holding of the Ninth Circuit Court of Appeals in *In re Comer*, 723 F.2d 737 (9th Cir.1984) which held that a state court determination of the *amount* of liability can be binding in a dischargeability action in that *Comer* involved state spousal and child support judgments. The *Comer* Court held that the litigant had full incentive to litigate and did fully litigate the issue in the state

court. Secondly, the *Comer* Court noted that the amount in controversy, i.e. the issue of damages, would be identical under both state law and bankruptcy dischargeability law as compared to a fraud action which may have a different measure of damages or require a different quantum of proof. The *DiNoto* Court also correctly noted a third grounds for distinguishing *Comer*, i.e. that as opposed to dischargeability proceedings under § 523(c) where the bankruptcy court has exclusive jurisdiction, it is generally recognized that state courts have concurrent jurisdiction with the bankruptcy courts over dischargeability proceedings arising under § 523(a)(5) relating to family support. *In re DiNoto*, 46 B.R. 489, 491 N. 1, *supra, accord: Goss v. Goss*, 722 F.2d 599 (10th Cir.1983).

The Fifth Circuit in the case of *Carey Lumber Company v. Bell*, 615 F.2d 370, 377 (5th Cir.1980), held that a bankruptcy court, when faced with a nondischargeability claim evidenced by a state court judgment, is not barred by *res judicata* or collateral estoppel from conducting appellate inquiry into the character and ultimately the dischargeability of the debt citing *In re Houtman, supra.* The *Carey* Court went on to hold that when a bankruptcy judge is presented with a state court consent judgment which contained rather detailed recitations of findings of fact which closely paralleled the language of the Bankruptcy Act's dischargeability exception for fraud, the bankruptcy judge properly considered those judgments in connection with a motion for summary judgment. Thus the *Carey* Court treated the state court judgment as evidence, and thus of less weight than the *Houtman* Court which indicated that the state court judgment established a *prima facie* case.

■ Turning to the case at bar, the Court specifically notes that although the state court's finding of fact No. Fifty Eight (58) makes a conclusory finding the Defendant is liable for actual damages and in addition thereto the Plaintiffs were entitled to punitive damages as a result of a *willful and wanton* refusal to complete the sale of the real estate as promised by the contract

of July 6, 1976, there are no specific findings of ultimate or operative facts relating to actual or positive fraud by the Defendant nor that the Defendant willfully and *maliciously* injured the Plaintiffs or their property. In the state court's conclusions of law number Sixteen (16), the court concluded that as a result of the Plaintiffs' attempt to mitigate and the Defendant's aggravation, the Plaintiffs were entitled to special or punitive damages. This is not sufficient.

■ These findings of fact and conclusions of law do not indicate the standard of proof applied by the state court was that of clear and convincing evidence as required by this court nor do they indicate that all of the elements necessary to find nondischargeability under § 523(a)(2) and (a)(6) were actually and necessarily litigated by the parties as discussed above. *See, e.g., In re Axvig*, 68 B.R. 910 (Bankr.D.N.Dak. 1987) and *In re Peoni*, 67 B.R. 288 (Bankr. S.D.Ind.1986) *cf. In re Maxwell*, 51 B.R. 244 (Bankr.S.D.Ind.1983), where the state court had awarded punitive damages. There the Bankruptcy Court assumed the state court judge used the clear and convincing standard of proof, and gave collateral estoppel effect to the state court judgment. The Court can make no such assumption here for the reasons discussed above, i.e. the standard of proof announced in the *Armstrong* and *Orkin* cases *supra*, was after the state court judgment in question. The court thus concludes that the proper procedure for the Court to employ when the issues have been actually and necessarily litigated on the merits in the state court is to order the party who is attempting to assert collateral estoppel or issue preclusion to file certified copies of the pleadings, a transcript of the relevant evidence, and the judgment with the bankruptcy court in the dischargeability proceeding. The Court will consider those matters as evidence in the bankruptcy proceeding, carefully review the same and decide what issues, if any, should be given collateral estoppel or issue preclusion effect based on whether the state court applied the requisite standard of proof and elements of the cause, and whether the

relevant issues were actually and necessarily litigated, and then hold a trial as to those remaining issues that must be actually and necessarily litigated in the dischargeability proceeding. *See, Matter of Life Science Church of River Park*, 34 B.R. 529 (Bankr.N.D.Ind.1983). It is therefore,

ORDERED, that Defendant's Motion for Summary Judgment is DENIED and it is further

ORDERED, that the Plaintiffs' Motion for Summary Judgment is DENIED and it is further

ORDERED, that the Plaintiffs file in this adversary proceeding a certified copy of all relevant pleadings, a transcript of the relevant evidence submitted at the trial, and a copy of the state court judgment upon which they are relying for the Courts review as to whether said evidence should be given issue preclusion effect in this adversary proceeding or advise the Court in writing that they do not wish to rely on the doctrine of collateral estoppel or issue preclusion within 30 days from the date of entry of this Order.